ALBANY,
August. 1810.

SMITH, *ex dem.* TELLER and others, *against* BURTIS and WOODWARD.

SMITH
v.
BURTIS.

THIS was an action of ejectment, brought to recover the possession of a house and lot of land, in the city of *New-York.* The cause was tried at the *Sittings,* held in the city of *New-York,* the 12th of *June,* 1809, before Mr. Justice *Spencer.*

The plaintiff proved, that *Isaac Teller* entered into possession of the premises in question, about the year 1765, and erected a house thereon, in which he lived, with his family, from 1765 to 1775, when he died in possession. At the time of his death, he left five children, *John,* his eldest son, and heir at law, *Henry,* his second son, one of the lessors, *Mary* (who intermarried with *Peter Thalkimer*) *Remsen,* and *Isaac,* other lessors of the plaintiff. The widow and children remained on the premises until the *British* army took possession of *New-York,* when they left the place and went to *Hudson. John,* the eldest son, died in 1777, aged about 14 years : and *Henry* was about 8 years old when his father died. After the *British* troops entered the city of *New-York,* (in 1776,) they took possession of, and occupied the buildings and premises, and on application of one of the creditors of *Isaac Teller,* permitted him, for thirty guineas, to take possession of, and appropriate to his own use, the materials of the buildings, which were sold by him; out of the proceeds thereof he retained the amount due to him ; and, a few years since, paid the residue to *Henry,* one of the lessors. The possession of the premises remained vacant during the war, and until 1795, when they were taken possession of by the defendants, or the persons under whom they claim.

The defendants offered to prove, that *Isaac Teller,* under whom the lessors claimed, had no title to the

A *disseisin* which will cast a descent, so as to toll an entry, must be a disseisin in fact, by which the rightful owner has been expelled by violence, or by some act which the law regards as equivalent in its effects. A mere entry upon the land of another is no disseisin; and where the plaintiff in ejectment rests on a right by descent cast, he must prove a tortious entry and expulsion of the true owner; or that the entry was not congeable.

ALBANY,
August, 1810.

SMITH
v.
BURTIS.

premises in question; and that the defendants had a good and complete title to the premises, which was not derived from *Isaac Teller*, or his children.

. . This evidence was objected to, by the plaintiff's counsel, on the ground that there having been a *descent cast* upon the immediate heirs of *Isaac Teller*, who died in possession; and that the possessory title being the only question in an action of ejectment, the plaintiff must recover.

The judge overruled the evidence offered by the defendants; and a verdict was thereupon found for the plaintiff.

A motion was made to set aside the verdict, for the misdirection of the judge, in overruling the evidence offered by the defendant, on the ground of a *descent* being *cast;* and also, on account of newly discovered evidence.

Affidavits were read, stating the evidence discovered since the trial; but as the opinion of the court related only to the other ground, it is unnecessary to state it.

*D. B. Ogden,* for the defendants. The first question is, what is such a possession of the ancestor, as will make

* *Co. Litt.* 237.
a. s. 385.

a descent cast, so as to *toll* the right of entry. *Littleton** says, " descents in fee which toll entries are ; as if a man seised of certain lands or tenements is by another disseised, and the disseisor hath issue and dieth of such estate seised ; now the lands descend to the issue of the disseisor, by course of law, as heir to him," &c. *Littleton* is speaking of what descents will toll entries, and the only case he puts, is that of a disseisor dying in possession. *Coke,* in his *Commentary,* says, " the law is the same of an *abatement* or *intrusion,* and of their feoffees, or donees," &c.

† 1 *Leo.* 209.
The case of *Matheson* v. *Trot,*† is full to the point, and supports the principles laid down in the books on this subject. The whole doctrine is more concisely stated

by *Gilbert*, in his *Law of Tenures*.* " When a descent is cast, the heir of the disseisor has *jus possessionis*, because the disseisee cannot enter upon his possession and evict him, but is put to his real action, because the freehold is cast upon the heir." And the reason why the freehold is cast upon the heir is, that there may be a person to discharge the feudal duties, a tenant to the *præcipe*, and to answer to the actions of persons. *Blackstone†* says, " descents which take away entries, are when any one seised, by any means whatsoever, of the inheritance of a corporeal hereditament, dies, whereby the same descends to his heir ;" but the authorities referred to by him, are *Littleton*, *Coke* and *Gilbert*, all of whom speak only of the cases of *disseisin*, *abatement* and *intrusion*.

Again, it is necessary that the ancestor should be seised of an estate in *fee-simple*, or fee-tail ;‡ and this seisin can be gained in three ways only ; by feoffment, grant, or disseisin. *Teller*, the lessor, does not pretend, that his ancestor was in by right ; nor was he an *abator* or *intruder*. Was he, then, a *disseisor ?* That he was not a disseisor, is evident from the very definition of a *disseisin*. I mean an actual disseisin, as distinguished from a disseisin by *election*, which depends on the disseisee, and not on the disseisor. *Littleton§* says, that " disseisin is properly where a man entereth into any lands or tenements where his entry is not congeable, and *ousteth* him who hath the freehold," &c. " Disseisin," says *Coke*,¶ " is putting a man out of seisin, and ever implieth *wrong*," and implies *force*.** Disseisins, abatements, and such like estates gained by wrong, are not said in law to be purchases.††

In the case of *Taylor, ex dem. Atkyns*, v. *Horde and others*,‡‡ Lord *Mansfield* said, " *disseisin* was a complicated fact, and differed from *dispossessing*. The *freeholder* by *disseisin*, differed from a possessor by wrong."§§ And, again, ¶¶" the precise definition of what constituted a disseisin, which made the disseisor a tenant to the demand-

*Margin notes:*

ALBANY, August, 1810.

SMITH v. BURTIS.

* *Gilb. Law of Ten.* (4 ed.) 20—23.

† 3 *Bl. Comm.* 17C.

‡ *Co. Litt.* 239. b. *Litt. s.* 387.

§ *Litt. sect.* 279. *Co. Litt.* 181. a.

¶ *Co. Litt.* 153. b.

** *Co. Litt.* 257. b.

†† *Co. Litt.* 3. b. 18. b.

‡‡ 1 *Burr.* 59.

§§ 1 *Burr.* 108.

¶¶ 1 *Burr.* 109.

ant's *præcipe*, &c. was *once* well understood ; but it is not now to be found.  The more we read, unless we are very careful to distinguish, the more we shall be confounded." I cite this observation to show how careful the court ought to be, not to allow a person to gain a title,  by means of this obscure and antiquated doctrine of a descent cast.

" A bare  entry on another," says Lord *Holt*, " without an expulsion, makes such a seisin  only that the law will adjudge him in possession that has the right ; but it will not work a disseisin or abatement, without *actual expulsion*."\* In  the  case of *Jackson, ex dem. Van Alen*, v. *Rogers*,† the present *chief justice*, laid it down that " to constitute  an actual disseisin, or one in fact, there must be a *tortious* entry, and  an expulsion."

\* 1 *Salk.* 246.
† 1 *Johns. Cas.*
33. 36.

The lessors claim to hold the verdict, solely on the ground of a descent cast, which tolls the entry. They ought, therefore, to make out this fact fully, clearly and satisfactorily.   Do they show that the entry was not *congeable ?*  Again, to every disseisin there must  be  a disseisee, as well as a disseisor.  But who was  the  disseisee in this case ?  There is no evidence of any person having  been  *ousted*, or turned out of the possession.  Though  I  do  not  mean  to say, that this ancient  doctrine  of  *disseisin*  cannot  be  applicable in this  state,  about  which  there  are  different  opinions ; yet I venture to assert, that it cannot be applicable to the case of a vacant possession.   To permit  its  application to vacant lands, in this country, would  be  productive of infinite mischiefs, and the greatest injustice.

Now, *Isaac Teller* entered on a vacant possession.  It is not stated, or pretended, that any person was in possession when he entered.

Again, if the lessors meant to rest their claim on this possession, so acquired, they were bound to show a continued possession of the ancestor.  They must keep a constant possession or a continual claim ; but it is a fact stated in the case, that the premises remained vacant du-

ring the war, from 1776 until 1795, when the defend‑ ants entered. A right acquired by possession may be lost by an abandonment of that possession. But rejecting the period of the war, the premises were vacant from 1783 to 1795, when the lawful owners of the freehold, finding it vacant, entered and took possession. It is a general principle, that where a person comes into possession lawfully, he shall be considered as in possession according to his title. The lessors, claiming by disseisin, admit they claim by *wrong*, and not by right or title. The entry of the defendant was clearly lawful ; for the lessors had not been heard of since 1777, and no one was in possession against whom an action of ejectment could be brought.

*Disseisin* is very different from an adverse possession, which is under an adverse title. A *disseisee* is in under no title. An adverse possession, to give a title, must be for twenty years. But a disseisin, and a descent cast, after a year and a day, tolls the entry.

There is another point of view in which this case may be considered, and which appears to me to be conclusive. The lessors, as they must recover on the strength of their own title, are bound to prove the exact time of the disseisor's dying seised, otherwise, it must be taken, that he died during the war, as hostilities had commenced in 1775.[*] A descent cast in time of war, gives no right of possession, though the disseisin was in time of peace.[†] " When the courts be open, and the judges and minis‑ ters of the same," says *Coke*,[‡] " may by law protect men from wrong and violence, and distribute justice to all, it[b] is said to be a time of peace. So when by invasion, in‑ surrection, rebellion, and such like, the peaceable course of justice is disturbed and stopped, so that the courts of justice be, as it were, shut up, *et silent leges enter arma*, then it is said to be time of war." And, " if a man be disseised in time of peace, this shall not take away the

ALBANY, August, 1810.

SMITH
v.
BURTIS.

[*] *Battle of Lex-ington* was *April* 19, 1775.
[†] *Gilb. Ten.* 34.
*Litt.* 412.
[‡] *Co. Litt.* 239.
[b]

ALBANY,
August, 1810.

SMITH
v.
BURTIS.

* *Vol.* 1. *p.* 562.
24 sess. c. 183.
s. 8.

entry of the disseisee." Whether the courts of justice are shut up or not, is a question of law, and to be tried by the record. And we have the opinion of the legislature, on this point, in the statute of limitations,* by which it is declared, that no part of the time, from the 14th of *October*, 1775, to the 21st of *March*, 1783, shall be deemed as part of the time for making any title, prescription, cognisance or claim, or bringing any action or suit. During that period, therefore, we must consider the courts of justice as shut. It was incumbent on the lessors to have proved, that *Isaac Teller* died before the 14th of *October*, 1775. It was a material fact to support a descent cast, so as to toll the entry. The descent must operate immediately, or not at all; and the right of entry, in 1783, or 1795, by the defendants, was not taken away.

Again, the evidence of title offered on the part of the defendants, ought not to have been rejected, as it might have been very material, even admitting the doctrine of a descent cast. Thus, where a person makes a devise in fee to another, and dies, and the heir enters, before any entry of the devisee, and dies seised, this will not take away the entry of the devisee.† Now, *non constat*, but that the defendants could have shown such a devise. So a descent does not take away the entry of a tenant for years.‡

† *Co. Litt.* 240. b.

‡ *Co. Litt.* 249. a. *Litt. s.* 411.

Again, suppose the defendants claimed under letters patent from the king, the right of entry could not be tolled.

This is sufficient to show that the evidence offered by the defendants might have been material, and ought to have been received.

*Hoffman*, contra. Wherever a man is seised, in any manner whatever, and dies seised, a descent is cast which tolls the entry. A seisin in fact of the freehold, and a descent cast transfer the right of possession. This is the

4

principle to be found in all the books, on this subject. The case of *Matheson* v. *Trot*,* is the one principally relied on by the plaintiff's counsel. *Henry*, in that case, who made the lease to *I. S.* had never entered, so as to be seised. *Henry* died, and rent was paid to his heir ; *Edward*, the devisee, afterwards entered ; and the question was, whether his entry had not been tolled by a descent cast ; but the court held there was no descent cast ; for the paying of rent to *Henry*, or his casually walking over the ground, without any special claim, did not make him a disseisor, nor an abator. *Henry* was never, in fact, seised, so that there could be no descent. But had he entered claiming title, and been seised, in fact, the court would have undoubtedly held, that there was a descent cast.

A *seisin* in fact, and a descent cast, are sufficient to toll the entry. Whether the seisin be with right or against right, makes no difference; for every seisin, by presumption of law, is of right. It is said there must be an *ouster* of the freehold. But *ouster* and *expulsion* from the freehold, and the possession is the same. *Ouster* does not necessarily imply an actual turning out of the possession, by force and violence. There will be a disseisin, when the possession is acquired by fraud, in the absence of the owner or tenant, and keeping him out of the possession. In the case of *Jackson*, *ex dem. Van Alen*, v. *Rogers*,† which has been cited, the chief justice says, " whenever an act is done, which of itself works an actual disseisin, it is still taken to be an actual disseisin, as if a tenant for years, or at will, should enfeoff in fee." Now, in such a case, there is no actual or forcible expulsion. A *tortious* entry, or expulsion, means only a legal expulsion. In *Doe*, *ex dem. Fisher and another*, v. *Prosser*,‡ Lord *Mansfield* says, " some ambiguity seems to have arisen from the term *actual ouster*, as if it meant some act accompanied by real force; and as if a turning out by the shoulders was necessary.

ALBANY,
August, 1810.

SMITH
v.
BURTIS.

* 1 *Leo.* 209.

† 1 *Johns. Cas.* 34.

‡ *Cowp.* 218.

But that is not so. A man may come in by rightful possession, and yet hold over *adversely* without a title. If he does, such holding over, under circumstances, will be equivalent to an *actual ouster.*" This language was adopted by this court, in the case of *Van Dyke* v. *Van Buren and Vosburgh ;** and it was held, that an actual ouster or not, was a question of law, and it might be presumed ; as from the perception of the rent and profits. *Gilbert*† says, if one coparcener enters into the whole, it is only in preservation of the estate of the other ; but if she disseiseth the other, after her entry, there she gets a possession distinct from her sister, and the descent will take away the entry." An *ouster* or a *disseisin* may be with, or without force. Every adverse possession of a freehold is an actual *ouster.* Every adverse possession of property is, in law, a dispossession ; and, for the same reason, every adverse *seisin* is a disseisin. If a lessee holds over, his landlord is dispossessed. A person in possession using the land, as his freehold, and taking the rents and profits, is seised.

* 1 *Caines's Rep.* 84.

† *Gilb. Ten.* 28.

It is said that the lessors have not shown that their entry was not *congeable ;* but being possessed as of a freehold, they were not bound to prove the negative. The defendants must show the entry to be *congeable.* If there was a seisin in fee, and the defendants mean to disprove such seisin, they must show that the entry was by permission, as lessee, or bailiff to them. In the case of *Jackson,* ex dem. *Van Alen,* v. *Rogers,* the defendant showed, that the lessor entered as a tenant at will, or by sufferance. And in *Taylor,* ex dem. *Atkyns,* v. *Horde and others,* the manner of the entry was shown by the defendant.

Again, it was asked, who is the disseisee ? If the lessors are seised of the freehold, without right, they must be the disseisors. The defendants offered to show that the persons under whom they claim, had a title. Then they

must be disseisees. The fact of *seisin* by wrong im- plies a disseisin ; and that is sufficient for our purpose. *Blackstone\** defines very accurately the words *ouster*, *dispossession*, *disseisin*, &c. " Disseisin must be by entry and actual dispossession of the freehold; as if a man enters by force or fraud into the house of another, and turns, or at least keeps, him or his servants out of possession." Was, then, *Isaac Teller* seised ? It is immaterial whether he entered into a vacant possession or not. If he, afterwards, kept out the true owner, it amounts in law to an ouster, or disseisin. But there is no evidence that the premises were vacant; and the court are not to infer that fact.

2. It is said that the evidence offered by the defendants ought not to have been overruled, as it was material to show that there had been no disseisin. The defendants could not show a patent, because, the premises are in the city of *New-York*, and all unappropriated lands are, by charter, vested in the corporation.

It is not easy to say what was the state of the country in 1775. If we look at the result of the difference between us and *Great Britain*, it was a public war. But, in fact, the courts of justice were open in all parts of the state not in the actual possession of the *British*. The burden of proof, to show that no descent was cast prior to the 14th of *October*, 1775, lies on the defendants, who claim the benefit of the exception. But the rights of the heir, by the statute, were preserved, though suspended during the war, and he became reseised in 1783, so that the descent was then cast.

*T. A. Emmet*, on same side. The lessors, *prima facie*, have a rightful estate of inheritance in fee. The defendants offered to show that *Isaac Teller* had no title. Granting that to be the fact, then he was a *disseisor*, and a descent was cast, which tolls the entry of the defendants ; so that whether the possession of *Isaac Teller* was right-

ALBANY
August, 1810.

SMITH
v.
BURTIS.

\* 3 *Bl Comm.*
167. 169. 178.

ful or wrongful, the lessors must prevail. As there was prima facie evidence of title, on the part of the lessors, it was incumbent on the defendants to show that *Isaac Teller* was not a disseisor, or that the entry was *congeable*, or a disseisin by election. But what is a *disseisin?*

* 1 *Burr.* 107. —109.

In the case of *Taylor, ex dem. Atkyns*, v. *Horde*,* Lord *Mansfield* says, " seisin is a technical term to denote the completion of that *investiture*, by which the tenant was admitted into the tenure ; and without which no freehold could be constituted or pass." " *Disseisin*, therefore, must mean some way or other turning the tenant out of his tenure, and usurping his place and feudal relation."

" *Disseisin* was a complicated fact, and differed from *dispossessing*. The *freeholder* by *disseisin* differed from a *possessor* by wrong." *Bracton*† (fol. 160.) puts many cases of possession wrongfully taken, which he calls intrusion, because there is no *disseisin*. " *Possessio, quæ nuda est omninò, et sine aliquo vestimento, quæ dicitur intrusio*." *Vestimento is seisin, investiture*. With submission to the high authority of so great a name, I think I can show that some of his lordship's observations are erroneous. His opinion appears to be founded partly on the probability of the doctrine being derived from the ancient feudal law, and partly from what he supposes to be the authority of *Bracton*.

† *Bracton, lib.* 4. *c.* 1, 2.

‡ *Co. Litt.* 153. a.

*Seisin* is possession ;‡ it is exactly *possession*, and nothing more. *Bracton* speaks of a seisin of a term for years. That there might have been a time when seisin meant something more, is not denied, but we have no trace of it in the books ; nor was investiture required within any period of our law of which we have any records. We must take up the doctrine at the time when a right of entry existed ; when the possession passed by a feoffment with livery of seisin, that is, a delivery of possession.

§ *Co. Litt.* 153. b.

*Coke*,§ in his definition of disseisin, distinguishes it from a dispossession. Disseisin always implies wrong ;

ALBANY,
August, 1810.

SMITH
v.
BURTIS.

but dispossession may be by right or wrong. And he cites *Bracton*, 216. *b.* "*Omnis disseisina est transgressio, sed non omnis transgressio est disseisina. Si eo animo forte ingrediatur fundum alienum non quod sibi usurpet tenementum vel jura, non facit disseisinam sed transgressionem, &c. Querendum est a judice quo animo hoc fecerit,*" &c. And, in ancient times, a disseisin was defined a *personal trespass of tortious ouster of seisin.*

A *disseisor* is a dispossessor by wrong, claiming a fee, or a title which is equivalent to a *fee;* for every *tortious* estate is *quasi* a fee.

*Bracton*, for an explanation of his meaning, in the passages cited by Lord *Mansfield*, refers to the title *de acquirendo possessione; (lib.* 3. c. 17. p. 38. *b.* 39. *a.*) where he says "*Item (possessionum) alia nuda, alia vestita. Nuda ubi quis nil juris habet in re, nec aliqua juris scintillam sed tantum nudam pedis possessionem : vestita, jure, titulo vel tempore.*" Here is no idea of feudal investiture, to distinguish a naked and a *clothed* possession. But the latter is a possession with right, and the former, a possession without right. What *Bracton* (*lib.* 4. c. 1. 3.) says, is this : "*Et sciendum quod possessionum quædam nuda pedum positio quæ dicitur intrusio et dicitur nuda eò quod non vallatur aliquo vestimento, et minimum habet possessionis et omninò nihil juris, et in parte habet naturam cum disseisinâ, et in quibusdam sunt dissimiles, quia ubicunque est disseisina, ibi quodammòdo est intrusio, quantum ad disseisitorem, sed non è contrario, quia ubicunque est intrusio, ibi non est disseisina, propter, vacuam possessionem, et in utroque casu possessio est nuda, donec ex tempore et seisina pacifica acquiratur vestimentum.*" And he defines *intrusion*, (*lib.* 4. c. 2.) *ubi quis (cui nullum jus competit in re nec scintilla juris) possessionem vacuam ingreditur quæ nec corpore nec animo possidetur, sicut hereditatem jacentem antequam adita fuerit ab hærede, vel saltem a domino capitali ratione custodiæ, vel ratione eschetæ, si forte heredes non existant,*" &c.

*Britton* (c. 32. *fol.* 80. *b.*) says, "so is it of a man wrong-fully ejected, and disturbed of the peaceable possession of his freehold ; and this violence is called disseisin and fresh force." Disseisin cannot be made, except of a freehold. No one can be a disseisor, if some one be not seised. (*Britton*, c. 42. *fol.* 106. *b.*) He is properly disseised, who is wrongfully ejected from any tenement, which he shall have peaceably held, and in whom are joined the right of the property in fee, and the right of the posses-sion of the freehold, and the seisin. " *Fit autem dissei-*

*\* Lib. 4. c. 3. fo-lio, 161. b.*

*sina,*" says *Bracton,\** " *non solùm cum quis presens, vel procurator, vel familia qui nomine suo fuerit in seisina, vio-lenter, injuste, et sine judicio, de libero tenemento suo qua-licunque, ejecti fuerint ; verum etiam fit disseisina, cum quis ad nundinas, vel peregè profectus fuerit nemine in domo re-licto vel possessione, alius in possessionem ingrediatur et ipsum reversum non admittat, vel cum ingredi voluerit, per se, vel assumptis viribus violenter repellat.*" " *Item non solùm fit disseisina secundum quod predictum est, sed etiam si quis præpotens uti voluerit in alterius tenemento con-tra ipsius tenentis voluntatem, arando, fodiendo, falcan-do, et asportando, contendendo tenementum esse suum quod est alterius, si autem nihil clamaverit in tenemento, aliud erit ; quia tunc erit transgressio et non disseisina de li-*

*† See also, lib. 4. 216. b.*

*bero tenemento.*"†

*Bracton* treats largely of disseisins, and mentions all the cases in which it happens ; but says not a word of investiture. It is a continued trespass, with a claim of

*‡ Fleta, lib. 4.*

title. *Fleta*‡ adopts the language and distinctions of

*§ Glanville, lib. 13.*

*Bracton.* *Glanville*§ does not define disseisin ; but he gives the form of the writ of *novel disseisin,* in several cases, (besides the general writ,) which show, that ob-structing the enjoyment of the freehold, by the exertion of an adverse claim, is a disseisin ; as for raising or de-stroying a ditch, or for raising the dam of a mill, to the

*\*\* Sec. 279.*

injury of the plaintiff's freehold. *Littleton\*\** says, that

disseisin is properly where a man entereth into any lands or tenements, where his entry is not *congeable*, and ousteth him that hath the freehold, &c.   *Coke*,* in his *Com-* mentary*, observes, " that every entry is no disseisin, unless there be an ouster of the freehold.   And, therefore, Littleton doth not set down an entry only, but an ouster also, *as an entry and a claimer*, or *taking of profits*," &c.

* *Co. Litt.* 181. a.

In the case of *Blunden* v. *Baugh*,† disseisin is defined as in *Bracton*, " where one enters intending to usurp the possession, and to *oust* another of his freehold."   Lord *Mansfield* seems to intimate, that every disseisin we know of is a disseisin by election ; all knowledge of actual disseisin being lost."   " The reports of assise," he says, " can only relate to cases where the owner admits himself disseised."   But the disseisins treated of by *Bracton*, and the older writers, are not disseisins by election ; for it is universally admitted, that disseisins at election grew out of the extension of the assise of *novel disseisin ;* and the first statute which extended that remedy, was that of *Westm.* 2. c. 25. 13 *Edw.* I. and *Bracton* wrote in the preceding reign of *Henry* III.‡   *Littleton* agrees with *Bracton ;* and had they treated of disseisin by election, they would have marked the distinction; for they speak of *disseisins* which cast a descent, so as to toll entry, which is not the case, where the disseisin was at election.

† *Cro. Car.* 302.

‡ 2 *Reeve's History of the English Law,* 86.

Again, Lord *Mansfield*§ says, " except the special case of a fine with proclamations, there is not a case, where the true owner, whose entry is not taken away, *may not* elect (by pursuing a possessory remedy) to be deemed as *not* having been *disseised*."   But where there is a disseisin in fact, a party cannot elect whether he will be disseised.   Before the reign of *Edward* II. when *Bracton* wrote, there could not be an election in such a case.   Every injury that intrenched on the enjoyment of a man's freehold, was considered as a disseisin, and became, of course, the subject of an *assise*.   But in the reign of *Edward* II.

§ 1 *Burr.* 112.

many of those cases were tried in actions of trespass, as well as by assise, and the plea of *soil* and *freehold* was allowed.*

None of the definitions of disseisin, given by *Bracton* and the old writers, which have been cited, are coupled with the idea of feudal investiture; nor is it clear, though some writers give it that explanation, that the privileges of a descent cast, are entirely connected with feudal tenure; for when the lands, before the *Norman* conquest, were *allodial*, they seemed to possess greater privileges. Lord *Coke*† observes, "the dying seised being an act of law, doth hold to this day, and this seemeth to be very ancient, for this was the law before the conquest." And he cites *Lambard*.‡ *Porrò autem quam maritus sine lite et controversia sedem incoluerit, eam conjux et proles sine controversia possidento, si qua in illum lis, fuerit illata viventem, eam heredes ad se (perinde atque is vivus) accipiunto.* It seems fanciful, then, to suppose, that any feudal ceremonies were requisite to give to the dying possessed of the ancestor (under claim of title) a privilege, which, before the introduction of the feudal law, resulted from mere inhabitancy, and which is mentioned by all the old writers, without any allusion to those ceremonies, as necessary to the disseisin on which it depends. But it is manifest, that simple tortious entry and possession, under claim of title, made a disseisin, on which a descent could be cast.

*Littleton*,§ speaking of descents, says, "if a man be seised of lands in fee, by *occupation*, in the time of war, and thereof dieth seised, in the time of war, and the tenements descend to his heir, such descent shall not oust any man of his entry." Lord *Coke*,** in his *Commentary*, observes; "*Occupation* is a word of art, and signifieth, a putting out of a man's freehold in time of war; *and it is all one with a disseisin in time of peace*, saving it is not so dangerous, as appeareth by *Littleton*, and therefore the law gave a writ in that case of *occupavit*, so

* 2 Reeve's History of the English Law, 341, 342.

† Co. Litt. 237. b.

‡ Lambard, folio, 120. 70.

§ Litt. s. 421.

** Co. Litt. 2496.

2

called, by reason of that word in the writ, instead of *dis-seisiviret*, in the assise of *novel disseisin*, if the disseisin had been done in time of peace; whereby it appeareth how aptly, both in this, and all other places, *Littleton* through his whole book speaketh." "But *occupatio* is applied to the possession, be it lawful or unlawful." But it is said, on the authority of 1 *Burrow*, (p. 109.) there may be a wrongful possession in fee, which is no disseisin; and it is asked, may not the possession of *Isaac Teller* have been of that kind? No doubt there may be a wrongful possession which is not a disseisin; as in an abatement, and intrusion; but as far as Lord *Mansfield's* position is calculated to cast a doubt on the nature of disseisin, (in which sense it is used by the defendants' counsel,) it is erroneous, and not warranted by the cases which he has cited. The case of *Matheson* v. *Trot*,* when critically examined, will show that his lordship was mistaken. The same case is reported in *Owen*, (p. 141.)

There is no wrongful possession in fee, which does not gain a tortious seisin, and in which the descent is not privileged. Every wrongful possession in fee, must be a disseisin, an abatement,† or intrusion, if the entry was wrongful; and if the entry was rightful, it is a *discontinuance* or *deforcement*. In the cases of disseisin, abatement, and intrusion, the descent tolls entry; and in the other two cases, there is no right of entry at all.‡

But, it is asked, have we shown that our descent is not *congeable*. It matters not whether our entry was or was not *congeable*; for if it was not *congeable*, we were *deforcers* or *discontinuers*, and there is no right of entry at all against us; therefore, the entry of the defendants, or those under whom they claim, was unlawful. But, in fact, the offer of the defendants, at the trial, to prove no title, shows that the entry was not *congeable*, but tortious.

ALBANY, August, 1810.

SMITH v. BURTIS.

* 1 *Leo.* 239.

† *Co. Litt.* 277. a. 3 *Black. Comm.* 167. *Fleta*, 195.

‡ *Co. Litt.* 238. a. 3 *Black. Comm.* 175. *Co. Litt.* 331. b. *Litt.* s. 592.

Nor was it necessary for the plaintiff to show who was the disseisee. The defendants claim title under a patent to *Kip*, and not under *Isaac Teller*, or his descendents. It must have been a subsisting title ; and the person so entitled, was, by the tortious enry of *Isaac Teller*, ousted *of his freehold.* There was a disseisin in fact. In this point of view, the question about a vacant possession is immaterial ; for in the legal sense, it only changes the tortious possession into abatement or intrusion."*

*3 Black. Comm. 169.*

The danger suggested, in regard to this doctrine of disseisin, as applied to the people, called " *squatters*," does not in reality exist ; for they are not disseisors ; they do not claim title, or enter, with any intention to oust from the freehold. The description of *Bracton*† is applicable to them ; and the *quo animo* is to be regarded ; for if they do not enter with a view to usurp the freehold, they are *mere trespassers.* It is in every man's power to prevent those who settle on his land, without permission, vulgarly denominated *squatters*, from becoming disseisors ; and it must be through gross negligence, if it should be ever doubtful whether they were trespassers or disseisors. *Vigilantibus, et non dormitantibus jura subveniunt.*

† *Bracton*, 216. a.

Again, it is asked, may not a person abandon a right acquired by possession? As if the right of the lessors had been lost by an abandonment of the possession. But their title does not rest on a mere possession, but on a descent, which Lord *Coke*‡ says, " is the worthiest means of coming to lands," &c.

‡ *Co. Litt.* 237. b.

Again, it is said, the descent may, for aught that appears, have been cast in time of war, which would not toll the entry. This objection was not made, at the trial, when any doubt, as to the time of *Isaac Teller's* death, might have been removed. But whether it was time of war or not, so as to prevent the entry being tolled, is to be tested by the fact, whether the courts of justice were open or not; and this fact is to be tried by the records of the court. Now, by searching the records of the court, I

find, that on *Saturday*, the 27th of *April*, 1776, the last court was held under the crown; and the first court held under the present constitution of the state, was on *Tuesday*, the 9th of *September*, 1777, at *Kingston*. So, that the only time in which the court was shut, so as to prevent an entry being tolled, was between those two periods.

Again, it is said, that the evidence offered would have been material to show a devise, or condition, or a patent; but this supposition is inadmissible with the offer to show that the lessors had no title; and the lands had been patented for above 100 years.

*J. Radcliff*, in reply. There is no evidence whatever, in this case, of any possession prior to the time when *Isaac Teller* is said to have entered, which was about the year 1765. It is the case, then, of a person entering on a vacant possession, without title, and building up a disseisin, and a descent cast to toll entry. There is no reason or authority to maintain, that a mere naked possession, thus taken, should ever amount to more than a mere *prima facie* evidence of title. But in the case of *Reed* v. *Carpenter*, formerly decided in this court, it was held, that such a possession was not even *prima facie* evidence of title; though the court, afterwards, said, that such a possession, accompanied by a conveyance, would be *prima facie* evidence of title.

I cannot perceive any difference between this case, and that of a common " *squatter.*" It seems to be taken for granted, that there was an antecedent possession, but neither the facts in the case, nor the state of the country, will warrant such a presumption.

I shall not follow the learned counsel, on the part of the plaintiff, through their elaborate and critical examination of the ancient doctrine of disseisin. Such an inquiry I regard as altogether useless. Instead of gaining light, by such a pursuit, we shall only be involved in deeper darkness.

ALBANY,
August, 1810.

SMITH
v.
BURTIS.

There is a principle of law, that a party disseised, has a right to do himself justice by entry, until his right of entry is taken away, and he is driven to his remedy by action. When the doctrine of disseisin was introduced, the action of ejectment was not known. Actions of assise and novel disseisin were the possessory actions, resorted to. All the feudal notions have long ago ceased; and the reason of this doctrince of disseisin has also ceased. It is only the *fiction*, in the action of ejectment, which prevents its being a proper remedy, where a descent has been cast. This *fiction* has been created by the courts themselves. Will the court then apply an antiquated rule, as to disseisin, when the reason of that rule has ceased? The plaintiff has applied to the law, and brought an action of ejectment; and will the court, on account of the *fiction* in that action, permit him to gain the possession, and drive the defendants to the remedy of *assise*, or a writ of right?

The only question before the court is, whether there was such a disseisin, when *Isaac Teller* entered, as will cast a descent, so as to toll the entry. I ask, again, if he was a disseisor, where is the disseisee? An entry by a person without title, is a mere wrongful possession, and not a disseisin. It has been a clear rule of law from the time of Lord *Coke*, that to constitute such a disseisin as will cast a descent so as to toll entry, there must be an *actual ouster* of some person, by violence or fraud. This was the rule laid down by this court, in the case of *Jackson, ex dem. Van Alen*, v. *Rogers*,* before cited.

* 1 *Johns. Cas.* 33.

*Isaac Teller* is said to have died seised, in 1775. If subsequent to *October* 14th, 1775, it was in time of war, so that the entry was not tolled. The statute of limitations shows the legislative sense, and must be the guide to this court, in fixing the time when the courts were not open for redress. The 14th of *October*, 1775, was the time when Governor *Tryon* was said to have *abdicated*

the government of the state, and the whole country was in confusion and disorder.

It has been said, that as this objection was not made at the trial, it cannot be made here. That rule applies only where evidence is not objected to by the adverse party, and admitted; he cannot, afterwards, raise the objection. The plaintiff must recover on the strength of his own title. It is not required of the defendant to make his objection at the trial, where it goes to the very essence of the plaintiff's right.

It is enough, under the decision of the judge at the trial, that the defendants could, by any possibility, have shown a title, to give them a right to a new trial. Suppose the defendants patentees, or the representatives of patentees, without entry, the right of entry is not tolled. So in the case of a devisee or lessee for years. There are, then, three several cases, in which, admitting the facts as stated by the plaintiff, the defendants' entry would not be tolled. The judge, therefore, ought not to have rejected the evidence offered, and the defendants are entitled to a new trial.

KENT, Ch. J. delivered the opinion of the court. The first and most important question raised in this case is, whether a descent was cast, upon the death of *Isaac Teller*, so as to toll the entry of the true owner.

The counsel, upon the argument, entered into a discussion of the general doctrine of *disseisin;* but I do not think it will be necessary to pursue at large that inquiry. All the books seem to agree that the ancient learning on this subject has become abstruse. Disseisin, in the age of *Bracton*, was considered in an extensive sense, and far beyond the idea which was first applied to it. Disseisin by election, in opposition to actual disseisin, was introduced very early, and became very prevalent, in order to extend the remedy by writ of assise, which was

devised by *Glanville*, in the reign of *Henry* II. It must therefore be difficult, in many cases, to know what species of disseisin was intended, though it is said that the old books, and particularly the book of assise, when they mention dissesins, generally relate to disseisins by election. The present question appears, however, to lie in a narrower compass; and by confining ourselves to a few plain and familiar authorities, we shall discover the principle, that the doctrine of descent cast applies only to a seisin, commencing by wrong, and founded on an ouster of the true owner. Whatever may be the meaning of disseisin, in other cases, its meaning when applied to the subject before us, embraces a tortious ouster. There must be a disseisin *in fact*. The rightful owner must have been expelled, either by violence, or by some act which the law regards as equivalent in its effects.

"Descents in fee, which toll entries, says *Littleton*, (s. 385.) are, as if a man seised of certain lands, is by another disseised, and the disseisor hath issue and dieth of such estate seised; now the lands descend to the issue of the disseisor, by course of law, as heir unto him. And because the law casts the lands upon the issue, by force of the descent, the entry of the disseisee is taken away." And in the next section, *Littleton* gives a like definition of a descent in tail, which tolls an entry. Both he and *Gilbert* have a chapter devoted to the subject, and they always speak or refer to a descent founded on a seisin commencing by wrong. " In descents which toll entries, it behoveth," says *Littleton* (s. 387.) " that the man die seised in his demesne as of fee." A seisin in his demesne as of fee, is the strongest and highest estate which the subject can enjoy. It would then be very idle to talk of a descent cast, in the case of a rightful seisin in fee, for there would be no right of entry to be tolled in such a case. The doctrine can only exist and apply in the case of a tortious seisin.

At the common law, if the disseisor, abator, or in-
truder, (and these are mentioned by *Coke*, as the only
wrongful acts of seisin, which will cast a descent,) had
died seised soon after the wrong done, the disseisee and
his heirs were barred of their entry. (*Co. Litt.* 238. a.)
This was deemed too harsh a rule, and the statute of 32
*Hen.* VIII. c. 33. was passed, saving the right of entry
to the disseisee, unless the disseisor had been in peacea-
ble possession, for five years next after the disseisin by
him committed. This statute shows pretty plainly, what
species of disseisin was then understood as applicable to
this subject. It is entitled, "an act that wrongful dis-
seisin is no descent in law ;" and it recites that whereas
" divers persons have heretofore, by strength, and with-
out title, entered into lands, and wrongfully disseised the
rightful owner, and so being seised by disseisin, have
thereof died seised, by reason of which dying seised,
the disseisee or such other persons, as before such de-
scent might have lawfully entered, were thereby exclu-
ded of their entry and put to their action." It is there-
fore enacted, " that the dying seised of any such dissei-
sor of any lands, having no right or title therein, should
not be taken or deemed any such descent in the law, for
to toll or take away the entry of any person, which, at the
time of the descent, had good and lawful title of entry,
except," &c.

The disseisin intended by this act, was one founded
on a tortious expulsion of the true owner. This is giving
the term its primitive and genuine meaning ; and in this
sense it is always used, when applied to a descent cast.
A mere entry upon another is no disseisin, unless it be
accompanied with expulsion, or ouster from the free-
hold. Disseisin is an estate gained by wrong and injury ;
and therein it differs from dispossession which may be by
right or wrong. This is the uniform language of the
best authorities, from the time of *Littleton*. (*Litt.* s. 279.

SMITH
v.
BURTIS.

*Co. Litt.* 3. b. 18. b. 153. b. 181. a. *Cro. Jac.* 685. 1 *Salk.* 246. *n.* 2. 1 *Burr.* 109.)

This tortious seisin, the lessors of the plaintiff were bound to show affirmatively, if they would put themselves upon the strict and ungracious right of a descent cast. A peaceable entry upon land, apparently vacant, furnishes, *per se,* no presumption of wrong. The benign and legal intendment is otherwise. According to Lord *Holt,* (1 *Salk.* 246.) a bare entry on another, without an expulsion, makes such a seisin only, that the law will adjudge him in possession that has the right. This court has frequently recognised the same rule, that an entry not appearing to be hostile, was to be considered an entry under the title of the true owner. It lay, then, with the plaintiff to show his entry *not congeable,* or to show a subsequent disseisin; for he entered upon vacant lands. We may infer title, from his ten years' possession, sufficient to put the tenant upon his defence; but we ought not to *infer* a tortious entry, or an actual ouster, sufficient to bar every defence. This would be a most rigorous conclusion, for it makes the ancestor of the plaintiff a disseisor; it tolls the entry of the true owner; it shuts out his defence, and drives him to his writ of right, which final remedy is now subject to the limitation of twenty-five years.

The subsequent use of the land by *Teller* was no disseisin. The case of *Matheson* v. *Trot,* (1 *Leon.* 209.) is a strong authority on this point. In that case, *Henry Denny,* the heir at law, when he came of age, claimed and sued out livery, or restitution of lands, out of the hands of the feudal lord, who had seised them as guardian for the infant. He then leased them for years, reserving a rent, and for years received the rents and profits from his tenant, and died so seised. This was held not to be a requisite seisin to cast a descent, though the court admitted, that his lessee had gained a wrong-

2

ful possession in fee. If here was not, during all this time an actual *pedis possessio* by the heir, (though the case says, he once walked over the lands with his tenant,) yet he held and enjoyed the lands by his tenant ; and the case showed conclusively, that he held them without title, for the lands had been devised in fee to his younger brother. This case, I think, is, in every view, much stronger in favour of a descent cast, than the one before us.

As it was, therefore, ruled, at the trial, that a descent was cast, and the evidence offered by way of defence, inadmissible, the court are of opinion, that there ought to be a new trial, with costs to abide the event of the suit.

New trial granted.