Gibson, C. J.
A tenant who holds from year to year as a cropper, is indisputably disqualified as a juror, in an action to which his landlord is a party: and tenure on- such terms, is a principal *220 cause of challenge. Whether the landlord may distrain or not, (about which I intimate no opinion,) the relation is intimate, and one of dependance. He may by the mere exercise of his will determine the tenancy, and deprive the cropper of his contract, who therefore cannot stand indifferent; and the juror who was in this predicament was properly set aside. On the other hand, the juror, who was brother to one of the counsel, was notwithstanding properly sworn of the panel. The counsel may have had no personal interest in the event; but, if any thing of the sort had been shown, such for instance as a contingent fee, it would have afforded ground for a challenge to the favour which with us is decided by triers fa-the court, at the option of the parties. I have known a sheriff to have a brother at the bar; but no one thought of that as a cause of challenge to the array. The case of a brother to one of the counsel in whom a particular interest is not shown, would seem to be referrible to the peremptory challenge provided in civil cases by the act of assembly.
I am of opinion, the deposition of Margaret Frick was improperly admitted. in cases of secondary evidence, the question whether a sufficient introductory ground was laid, has always been treated in courts of error as a proper subject of discussion. In Lamberton v. Sanderson, (3 Binn. 192,) this court reversed the judgment, because the eonrt below had rejected evidence Of an obligor’s handwriting, although evidence had been given that the subscribing witness was out of the jurisdiction; and, that after diligent inquiry no person could be found to prove his signature. So a question of what was reasonable notice, where no particular time was specified in the rule, was entertained in Hamilton v. M‘Guire, (2 Serg. & Rawle, 478,) and the same principle was involved in Sweitzer v. Meese, (6 Binn. 500,) and, also, in Carpenter v. Groff, (5 Serg. & Rawle, 162,) where the decision of the court below was overruled. There is an endless list of other cases where a court of error will inquire into the sufficiency of introductory evidence; as, for instance, of the existence, loss of, and search for deeds or other writings; of the notice to produce them; of evidence of interest, on an objection to a witness; or evidence of the execution of deeds or writings'offered in evidence collaterally: and many other cases, which at present do not occur to my recollection. Whatever, therefore, may be our opinion of the expediency of entertaining questions of this sort, it is too late to remit them to the discretion of the courts below. Nor would I he disposed so to remit them, if that were still open to us. Of the truth of preliminary evidence, the court to whom it is given are-peculiarly qualified to judge; and I shall always hold myself bound by every conclusion of fact drawn by the court below; but whether the evidence, if believed, make out a case to bear out the decision, is a conclusion of law which I am competent to draw for myself. , A deposition is, unquestionably, but secondary evidence, *221 and admissible on proof of its having been taken under a competent authority, on due notice, and in a proper manner: and, also, on proof that the contingency, for which it was intended to provide, has actually happened: and, if it be admitted without this, it is error. Here the objection was to the proof of inability to attend, which was, that the witness had broken her leg eight or ten years before, and had again been hurt the preceding autumn; but that she was a stout active woman of her age, and had come from Milton to Northumberland a few days before; that she was not able to walk to court, nor would it have been prudent to bring her from Northumberland on a wet day, such as that on which the cause was tried, unless in a covered carriage, in which she might have safely been brought. This is an accurate statement of the proof: by which it appears she was able to travel ten miles on the preceding Monday; was within two miles of the court house during the trial; and might have been brought to court during the same day in a close carriage. Was this a sufficient cause to dispense with her attendance? Every one of the least experience knows the immeasurable superiority of oral over written testimony, and the benefit of a cross-examination in the face of the court, during which the eyes and the ears of the jurors may, with equal advantage, be employed in the discovery of truth. Of these advantages nothing ought to deprive a party but absolute necessity, either physical or moral. In an inquiry involving the charge of forgery, or, at the least, the imputation of moral turpitude on the one side or the other, and, in a very mysterious transaction such as this,an opportunity to probe the witnesses and sift their testimony, is of inestimable value; nor ought it to be refused, to suit the mere convenience of a party. It rained during the trial; but, in the case of a witness who might be prevented from attending by bad weather on the day, ought-not the party to have had forecast enough to bring her to the seat of justice while the weather was fair, even before the day? But the badness of the weather was in fact no obstacle, or at least a very slight one; nor ought the plaintiff to have been absolved from his duty, for the alleged inconvenience in procuring a close carriage. For myself, I believe he was guilty of gross negligence, and thát the consequences of it ought to have fallen on himself.
The copy of James M‘Mahon’s deposition, it seems to me, was properly rejected. No account was given of the original, or of its loss, and nothing proved but that due search had been made for it. Beside, the introductory evidence is particularly defective in not showing the paper to have been copied from the original: nor was there the usual ground laid to make way .for the original itself, had it been produced.
But, it seems to me, Samuel Hunter’s will ought not to have been admitted. I do not question the competency of declarations by deceased persons, which were made in prejudice of their inte *222 rests; but is that the case here? The defendant had given evidence to show that Lodge was insolvent, and the consequent improbability of his having paid the purchase money; and the plaintiff offered the will of Hunter to show his admission that Lodge was. joint owner with him of certain lands, taxed in the names of Hunter and Lodge, and to rebut the evidence of insolvency. The part of the will which is material to the question, is in these words: “ I do hereby order and direct, that the plantation and tract of land sold by Mr. Jonathati Lodge and myself to George Dougherty, that the remainder of the monies due to me, arising from the sale, be appropriated by my executors to and for the payment of my just debts; my share thereof amounting to one hundred pounds: and I do further order and direct, that the plantation and tract of land in Turbert township, near to Mr. Newit, taken up by Lodge and myself, be sold by my executors, and the sum of twenty-five pounds fifteen shillings, paid by me for warranting the said tract, is to be paid by Mr. Lodge, or his executors, before he can, or may be entitled to any share or purpart thereof.” It is difficult to understand how a declaration, that the party’s share of the price of a tract of land sold by him and another, is a hundred pounds, or that the other is indebted to him for a share of the expense incurred in procuring the title to another tract, can be said to have been in prejudice of his interest. It is said to be so, because, by acknowledging the interest of the other, he releases his grasp on the whole. But does it appear that the whole was within his grasp? There is no sacrifice of infei’est in renouncing a claim to property which all the world knows belongs to another. Should A. declare that B. is seised to his own use, and not in trust for C., such a declaration would not be evidence against C., on the supposition of its having been made with a view to the remote and unexpected contingency of a contest for the property between A. and B. In the case before us, it does not appear that the title was in the name of Hunter, but it would seem, from the land having been taxed as the property of both, that the title stood in the names of both, and there does not seem to have been colour of claim, or a pretence for it, by Hunter or any one else. And we cannot shut our eyes to the real object of the evidence, which was not to show disclaimer by Hunter, but to show the value of the property, and that there was an available fund of a hundred pounds within the power of Lodge. The evidence was offered, not merely fo show the disclaimer; but, in express terms, to rebut the evidence of insolvency: and it was indisputably not competent to show the value of the property. But in no aspect will the case justify a further relaxation in this respect of the common law, one canon of which requires that testimony by witnesses be under the sanction of an oath; for which a possible sacrifice of interest is an imperfect, if Hot a dangerous, substitute.
I am of opinion that the deposition of Bulk Huzzy, also, ought *223 to have been admitted. The objection is, that her husband came into possession of a part of the premises under the late Mrs. Young, since intermarried with the. defendant, Mr. Lloyd, and might, it is said, be'turned out in the event of a recovery. To understand this, it is necessary to bear in mind, that the action was originally brought, against Pipher, for land which lies in the end of a survey whose general figure is that of a parallelogram; the whole of which was in the possession of Mrs. Young. The premises are described in the writ as one hundred and fifty acres, or thereabouts, bounded by persons whose lands adjoin the end and two sides of the parallelogram; but without designating any boundary between the premises and Mrs. Young’s other land. It. was proved by Huzzy, the husband of the witness, and the only person who speaks of his possession, that he holds no part of the premises leased to Pipher; and, consequently, no part for which the action was originally brought. The cause was first tried while Pipher was the only defendant, and with no other description than that contained in the writ; then the plaintiff filed his statement, describing the land by definite boundaries, and including the possession of Huzzy, in addition to that of Pipher; and, lastly, Mr. Lloyd and his wife, late Mrs. Young, were admitted to defend as landlords. Now, the plaintiffs’ right of action is not enlarged by the coming in of the landlord, who is made defendant only as regards the lands sued for; because a different rule might subject the tenant to an action for mesne profits which lie never received, or for a trespass which he never committed. The plaintiff, therefore, could recover no lands but those that were in the possession of Pipher at the commencement of the action; and, so far was he from proving Huzzy to be in possession of any part of what was leased to •Pipher, that Huzzy himself, the only witness who speaks of the matter, explicitly proves the reverse. According to this view of the subject, Huzzy was not interested, and his wife was a competent witness. But it is said, the sheriff’s return of service is made evidence, by the act of 1807, of the defendant being in possession; and that this extends to all the-lands included in the description. If this be so, a plaintiff, by enlarging his description, can exclude the testimony of all the landlord’s tenants who happen to reside within the county. But I think I may confidently assert, that no one can be turned out on a judgment against the landlord, who could not have been turned out. on a judgment exclusively against the tenant; the subject matter of the action undergoing no change by adding the landlord, whose privilege would be a barren one, were the exercise of it to subject him to an increase of responsibility. Granting, then, that the shei’iff’s return is evidence that Pipher was in possession of all the lands included in the description, still Huzzy, not having come in under him, could not be turned out on the judgment. But was it the intention of the legislature to declare the defendant, at the return of *224 the writ, to be in possession of all the land described, to all intents, and for every purpose? Under the old practice, the mischief was that the plaintiff was often nonsuited after having shown title, for want of proving what was merely the formal part of his case, a trespass on any part of the land; without which the defendant could not be driven to a defence on his title. But it was not necessary to prove the defendant in possession of all the land described in the declaration; it was sufficient to prove a trespass on any part of it. Neither necessity nor convenience, therefore, requires the construction of the act to be carried further than the particular mischief intended to be remedied. But, admitting that for the purpose of putting him to proof of his title, the defendant is to be taken to be in possession of all the land claimed, is he to be considered so for any other purpose? Undoubtedly the legislature never intended by this provision to interfere with questions of competency depending on interest; nor ought the law to have that effect.
Errors are assigned also in the charge, one of which I take to be fatal.
The jury were directed that the possession taken by Reuben Haines in 1783, by putting a tenant on the land after the widow of Lodge had abandoned the premises, was not evidence of an ouster, unless they should be of opinion that Haines intended to commit an ouster. The argument in support of this is, that he was a trustee for Lodge’s heirs; and that, until the contrary distinctly appear, the law will intend that he entered not as an enemy, but to preserve the inheritance in their absence. A vendor in possession, is a trustee by implication of law; but nothing is better settled than that the statute of limitations runs in the case of an implied trust. When this cause was before us on a formeroccasion, I expressed an opinion on this subject, (4 Serg. & Rawle, 569,) which I see no reason to retract. But is there even an implied trust when the purchase money has been paid, and the possession delivered? By the very terms of the contract the seller is to have nothing further to do with the possession; and, if he is a trustee of any thing at all, it is of the title which he holds subject to the call of the purchaser, and with which alone he can have any concern.' If, indeed, any part of the purchase money were unpaid, his entry might be referred to a motive which would legitimate the act, and entering only to enforce a compliance with the contract, he would hold in trust for the purchaser, after the purchase money should be paid. But here the suit itself, without a tender, is an assumption by the plaintiff of the very fact of payment. What was it to Haines that the premises had been left vacant? He was called upon neither by duty nor interest, to resume the possession. lie was a trespasser against the owner, just as any other person would have been, in patting a tenant on the land. The statute of limitations is most beneficial in i*s coaseouences, *225 even as regards honesty and fair dealing, and no judge or juror who has a proper regard for his duty will be deterred from giving it its full and fair effect, by the supposed hardship of its operation in the particular instance. This is a matter in which the community has an immense stake; for where a party is base enough to have recourse to perjury or forgery, after those who could have shown the-truth of the case have passed away, there is no other hope of salvation: when that fails, the innocent man is delivered into the hands of his adversary, bound hand and foot.
The remaining exceptions to the charge, that the defendants were not protected by the statute in regard to the land recovered from Burke, and that an entry by Mrs. Lodge, while she resided in Northumberland, would stop the running of the statute up to the period of the entry, are not sustained. From aught that appears, Burke may have held under the plaintiffs: at all events, it was not shown that he or any one else held this part of the premises adversely for twenty-one years. The direction as to the effect of a supposed entry by Mrs. Lodge, was technically correct, and we are not to suppose that its bearing on the cause, was not comprehended by the jury. The last exception is to a part of the charge which was favourable to the defendants, who cannot, therefore, assign it for error. For these reasons, I am of opinion that the judgment be reversed.
Rogers, J.
It is unnecessary for me to notice the first bill of exceptions, except by stating my concurrence in the view taken of it by the Chief Justice.
The Court of Common Pleas, in the exercise of a sound discretion, admitted in evidence the deposition of Margaret Frick. Without undertaking to say positively what my opinion would have been, had I tried the cause, (and in all probability it would have been the same as the Court of Common Pleas,) I do not'think myself at liberty to reverse the decision of the court in receiving this evidence. We should be cautious in reversing for such errors; for there is much danger, by so doing, of injuring the wholesome administration of justice. It is impossible that the parties can put on the record a number of circumstances which properly influence the mind of the court. A knowledge of the witness, the conduct of the party and his counsel, going to show the danger or propriety of this secondary evidence, will, and ought to have their due weight. We should cramp the usefulness of the Courts of Common Pleas, unless we allow considerable latitude to their legal discretion in the rejection or admission of such testimony. To suppose that we can determine this matter better than the court who try the cause, is to believe that without light and knowledge we can rejudge their justice with all the circumstances which necessarily attend the trial of issues before their eyes, and with a knowledge which we cannot have of the conduct of the parties, witnesses, and *226 counsel. I will not say, that this is not assignable for error, but this I will say, that it behooves the party wishing us to reverse on this ground, to bring a very strong case before the court
Experience, it is true, has taught us, that viva voce testimony is in general better than depositions; but by the same means we also learn, that the free and liberal use of depositions tends to expedite causes, and in some cases, and for some things, is at least as good a mean of eliciting truth. It should be guarded, but not put under unnecessary restrictions.
Frequently depositions are used to prove the attestation of a witness to deeds or other instruments of writing, or perhaps a single fact, which, if there had been any ingenuousness in counsel, would have never been denied. There is no danger in saying that the court will consider all the circumstances connected with the ease, the importance of the deposition, and will, from a view of the whole, determine whether injustice be done by substituting the deposition for the examination of the witness at the bar of the court.
In this case the deposition was not an important one. Mr .Lloyd cross-examined the witness, and there is not the slightest reason to believe that he was injured by the reading of the deposition in place of a viva voce examination. He made a general objection to the deposition, with a wish, perhaps, that it might be admitted, and that he might have cause of reversal, in case the verdict of the jury was in favour of the defendant. It appears the witness was eighty-years old, the weather unfavourable, a reason which the judge felt, and which we cannot at this distant day, and with this pleasant weather, fully appreciate.
I agree with the Chief Justice, in the rejection of the deposition of James M‘Mahon.
In the course of the trial, the Court of Common Pleas admitted the will of James Hunter in evidence, and this has also been assigned for error. It was deemed important by the plaintiffs and defendants, to prove the circumstances of Jonathan Lodge. The defendants endeavoured to prove, that Lodge was poor; the plaintiffs that he was fully able to pay the sum of money which they alleged he had paid. For this purpose, the plaintiffs, among other things, showed that certain lands had been assessed in the name of Samuel Hunter, and Jonathan Lodge, and then offered the will of Hunter, in which he declares that the lands so assessed in their joint names, was in truth owned by them, as tenants in common. The will is dated the 29th of March, i 784, and proved the 21st of June, 17S4; and be it remembered, that the receipt of JReuben Haines to Jonathan Lodge is dated the 7th of December, 1782. This evidence was then pertinent to the matter in dispute, which turned on the páyment of the money, for which they produced Haines’s receipt.
The proof of the state of a personas pecuniary affairs is general la its nature, and cannot with any propriety be subjected to the *227 strict rules of evidence; and this was decided a tour last session in Chambersburg.
The usual testimony in a court of justice, in such cases, is reputation, the opinion of neighbours, a general estimate of the value of the property. You may, to be sure, inquire more particularly, as, whether he was owner of a particular piece of property; but it never was required, that you should show a bill of sale for his personal property, or the title deeds of his real estate. It is upon, a principle of convenience that courts of justice have, in such cases, dispensed with the strict rules of evidence. The expense and trouble would be intolerable. Good sense, and an attention to the ordinary concerns of life, have led to the practice of receiving such testimony without objection. Necessity, either moral or physical, and, I may add, general convenience, dispenses with the ordinary rules of evidence.
It is' admissible on another principle. It is the assertion of a .fact, contrary to the interest of Samuel Hunter, that Jonathan Lodge was the owner of a moiety of this tract of land. It is a rule of evidence, founded on the best sense, and knowledge of human nature, that a memorandum, made in the ordinary course of business, which charges the person making it, may be given in evidence to prove that fact, in a suit between third persons; as where a steward makes a charge against himself, it is evidence, in a suit between his employer and a third person. There is no danger in such testimony; and particularly, when, at the time of the entry, there was no dispute between the parties. The attention, which we all naturally pay to our interest, leads us pot to charge ourselves unless we ought to be charged. It is received in evidence, for as much as it is worth; and it is sometimes evidence of the most conclusive nature. 1 Stark. Ev. 69, 70, 71.
I concur with the Chief Justice, that the record of the suit of Sarah H. Young v. Burke, was properly admitted
It appears from the writ, that this ejectment was brought against William Pipher, the. tenant of Sarah H. Young, for a tract-of land situate in Point township, Northumberland county, containing one hundred and fifty acres, or thereabouts, bounded by lands of Thqmas Grant and others. At the time the suit was instituted, Sarah H. Young was in the possession, and sole owner of the whole property. Pipher was in the actual possession of one hundred acres, and no person on the remainder. There can be but little question, that it was the intent of the plaintiff to bring "suit for all the property above and below Lodge’s run; and the writ is sufficiently general to include the whole. The objection is, that William Pipher, being in possession of only one hundred acres, there can be a recovery in this ejectment, only co-extensive with his actual possession; and this would be true, were it not for what subsequently took place. Sarah H. Young afterwards intermarried with William Lloyd, and conveyed the property on *228 which Pipher resided to him; and, upon his death, the remainder descended to his daughter Caroline, who intermarried with Nourse. The 30th of August, 1816, a particular description of the land was filed under the act of assembly; to which, in the lifetime of Sarah H. Young, there was a general defence taken. This, it is admitted, embraces all the lands above and below Lodge's run. If the defendants intended to take defence, only for the part in the possession of Pipher, they might have done so. Having taken defence generally, it applies to the statement, and not to the writ, and they cannot be permitted to say, that the suit was only for that part of the land in the actual possession of Pipher. A recovery in this ejectment, will authorize Lodge to turn out every person in the possession of the land embraced by the statement.
If this should be the case, then there can be doubt that Ralph Huzzy wqs the tenant. of Caroline Nourse, and her husband would be interested in preventing the recovery of the plaintiff. He would not be a witness to support his possession, and, if he cannot be examined, neither can the testimony of his wife, Ruth Huzzy, be received. But it is said, that her deposition being taken, at a time when her husband was not interested, makes the distinction. Without entering into an examination of the general doctrine on this point, there is one consideration which, with me, is decisive.. Ralph Huzzy, the husband, became interested as the tenant of Caroline Nourse, after his wife’s deposition was taken. It was the act of one of. the parties in interest, in this action of ejectment. To permit a deposition, under such circumstances, to be read, might bq productive of great abuses. It would lead to trick and artifice, which should be carefully guarded against. They would have it in their power to secure the reading of a favourable deposition, by causing the witness, to become a party in interest in the suit.
There have been several exceptions taken to the charge of the court; one of which I shall proceed to notice, dismissing the others, with- the single observation, that, after an attentive examination, I concur with my colleagues, that the court are not in error.
The Court of Common Pleas, in their answer to the third point of the defendants’ counsel, say, “ That the putting a tenant on the land is not evidence of ouster, unless the jury should believe that he thereby intended to oust Lodge, and his heirs.” On this point, I have the misfortune to differ from my brethren, and it becomes me to assign the reasons for the opinion I have formed.
The charge of the court is grounded upon the fact, that Jonathan Lodge had paid the whole purchase money for the land. The verdict of the jury has fixed this, and I have thought it but right for the defendant, to give him the benefit of this fact; for, without it, there is no pretence there was error, in the charge of the court. The question, then, is, the money, (that is, the consideration for the land) being paid, whether the putting a tenant on *229 the land, by Reuben Haines, is evidence of ouster, unless the jury should believe he thereby intended to oust Lodge and his heirs. Is it per se evidence of ouster, and would the jury, in the absence of all other proof, under the circumstances of this case, be bound to say, that by that act he had ousted Lodge and his heirs ? After the death of Jonathan Lodge, Mrs. Lodge, with her minor children, moved into the town of Northumberland, and left the lands on which the family had resided vacant; and Reuben Haines took possession by putting a tenant on the premises. It is an important part of this case, that the land had been purchased by Lodge from Haines for a price equal to its value, and that this has been fairly paid. In what situation, then, does Reuben Haines stand towards the minor children of Lodge? In the character of a trustee, doubtless. In England, and in those states where they have a Court of Chancery, an action of ejectment, against a stranger, would be brought in the name of the trustee, in whom is vested the legal title. In Pennsylvania, from necessity, the cestui que trust may sue in his own name; but I believe it will hardly be doubted that the suit would be properly brought in the name of the trustee, the owner of the legal interest. 1 Dall. 72.
If a stranger had entered into the possession, Reuben Haines could have maintained ejectment, and recovered by virtue of his legal title. It would have been no answer ,to the action, that the equitable interest was in Lodge’s heirs.
If, then, Reuben Haines had recovered the possession from a stranger, the legal intendment would have been, that he recovered for the use of the owners of the equitable estate. I hold these principles to be incontrovertible.
Here he enters upon a vacant possession, by means of his tenant’s standing as the case supposes, in the relation of trustee to the minor children, whose father, in good faith, had paid the full value of the land; it would be a want of common charity to say that he entered in hostility to their right. It would have been an impeachment of the bounty of Haines, that, with a knowledge of all the circumstances, he entered for himself alone, and not for the protection of their rights. If, on his entry, a suit had been brought against him as a trespasser, could it have been sustained? Might he not have complained, “It is singular that you should pursue me as a trespasser, who have the legal right, and in virtue of which I entered, to protect a vacant possession as your trustee, and not with the dishonest intent which your action supposes, of holding the money and the land.” With a defence of this kind, be would have stood on high ground, and it would have been difficult to have resisted such a plea; the legal intendment always being, that he enters by right, and not by wrong. If the act be equivocal in its nature, the presumption is, that it is in accordance, and not in hostility to the true owner. This is, as has been well expressed, thfc benign and legal intendment of the law. 6 Johns. 216,
*230 We are not without authority to sustain these positions, which I should have no hesitation in adopting, had the principles come for the first time before the court.
Lord Coke, Co. Litt. sect. 401, 245, b. says, “If a bastard invite the mulier to see his house, and to see his pictures, &c., or to dine with him, or to hawk, hunt, or sport with him, or such like, upon land descended, and the mulier cometh upon the land accordingly, there is no interruption, because he comes in by the consent of the bastard; and, therefore, the coming upon the land can be no trespass; but, if the mulier cometh upon the ground of his own head, and cutteth down a-tree, and diggeth the soil, or take away profit, there shall be interruption; for, rather than the bastard shall punish him in an action of trespass, the act shall amount in law to an entry, because he hath a right of entry. So it is if the mulier put any of his beasts into the ground, or command a stranger to put in his beast, these do amount to an entry; for albeit, the mulier doth not use any express words of entry, yet these and such like acts, done with any words, amount in law to an entry; for acts without words may make an entry, but words without an act cannot make an entry. Co. Litt. 245, b. sect. 401.”
I have made this extract from Lord Coke, the highestauthority, for the sake of the principle immediately applicable to this point: That the legal intendment is, that the entry upon a vacant possession shall be adjudged in the pursuance of a right, and not in the commission of a wrong. I have endeavoured to show, that Reuben Haines had a legal right of entry. The application of the principle is then most obvious.
As this authority is somewhat ancient, it may perhaps add to the force of the principle, that it has been adopted in a modern case, which appears to have been elaborately argued and well decided. “ A peaceably entry,” says Chief Justice Kent, (6 Johns. 216,) “ upon land apparently vacant, furnishes per se, no presumption of wrong.” The benign and legal intendment is otherwise. According to Lord Holt, (1 Salk. 246,) a bare entry on another without an expulsion, makes such a seisin only, that the law will adjudge him in possession that has the right. This court has frequently recognized the same rule, that an entry not appearing to be hostile, was to be considered an entry under the title of the true owner. It lay then with the plaintiff, to show his entry congeable, or to show a subsequent seisin, for he entered upon vacant land.
If Reuben Haines stood in the relation of trustee, the above authorities conclusively prove, that his entry would not be a trespass; but it would be held that he entered by virtue of a right, nay a duty which devolved upon him to protect the interest of Lodge’s heirs. If then his entry was to protect their rights, his subsequent occupation, by means of a tenant without more, will partake of the samó character. It must be hostile in its inception, and so continued for twenty-one years; 12 Johns. 368. 9 Johns. 165. It will be in *231 accordance with his original entry, and not prima facie hostile; and this is what the learned judge has decided, and nothing more. He says in effect, that the mere act of putting a tenant on the land, will not be evidence of ouster; but that if the jury believe that he thereby intended to oust Lodge and his heirs, it will.
In order to bar the recovery of the plaintiff, who has title by a possession in the defendant, strict proof has always been required, not only that the trust possession was taken under a claim hostile to the real owner, but that such hostility has been continued by the succeeding tenants. Brandt v. P. and D. Ogden, 1 Johns. R. 158.
Adverse possession, so as to defeat the conveyance of the true owner, must be made out clearly and positively; and, to constitute an adverse possession, it must be adverse in its commencement, and so continue. 9 Johns. 168, 9. Jackson v. Sharp, 8 Johns. 280. 9 Johns. 165.
The doctrine of the court, with respect to adverse possession, is, that it is to be taken strictly, and not to be made out by inference, but by clear and positive proof. Every presumption is in favour of possession in subordination to the title of the true owner. The possession cannot be considered adverse, if the original entry is not to be so considered. 12 Johns. 368.
. The act relied on as evidence of ouster, should be unequivocal, that the opposite party may have notice that he intends holding the land by an adverse title. When possession is taken under colour of right, they may consider it as continuing clothed with the same character, until the contrary is most clearly and manifestly shown. Reuben Haines having entered as a trustee, the act of putting a tenant on the land, is not, in my opinion, evidence of ouster, unless the jury shall believe he thereby intended to oust Lodge and his heirs.
As this cause will be ordered for a new hearing, I would not wish to be understood, as expressing an opinion on the facts of the cause. I have considered it as a mere abstract question of law, arising on the charge of the court, and the verdict of the jury.
Tod, J.
The rejection of Mrs. Huzzy, as a witness for the defendants below, was right in my opinion. The fact of interest was disputed, whether Huzzy’s tenancy was included in the writ. But it was clearly included in the plaintiffs’ description filed: and on that description a general defence was taken, and issue joined. Supposing it to be doubtful, whether Huzzy, the husband of the witness, could be turned out of possession on the recovery of the plaintiffs in the ejectment; yet, that very doubt, would perhaps be sufficient to exclude a witness, who pending an ejectment, comes by his own act, and by consent of the defendants, into the situation in which Huzzy was placed as tenant of part of the land claimed.
The defendants, on the trial, offered in evidence a copy of .the de *232 position of James Mahon, taken before William Seed, esq., u justice of the peace, who in it certifies the same to be taken in the presence of Jonathan Lodge, one of the plaintiffs below. There also appears in it a cross-examination of the witness by Lodge. The evidence was rejected by the court. The copy had been made out by Charles Donnell in 1821; and that copy, together with the other papers and records in the cause, some of them copies and some originals, prepared for a removal of the cause to the Supreme Court, all connected together, were authenticated in the usual manner by one certificate at the end of the collection, by the prothonotary under his seal of office. Mr. Donnell being sworn on the trial, stated to the court that he was clerk in the office at the time, and that the copy produced was in his hand-writing. He said, that he would suppose he copied it correctly, but had no distinct recollection of the original. He had some recollection of copying a paper like this, but did not remember whether he made the copy from an original or from a copy. By a rule of the court below, all depositions in a cause are directed to be filed in the office by the first court after they are taken, otherwise they are not to be read. The copy produced has no entry in it, or upon it, showing the original to have been filed in the office. It is alleged, and appears to be conceded, that depositions thus lodged in the office, are often misplaced, and sometimes lost. The witness, James M'Mahon, has since died. It is admitted on the record that all due search had been made for the original.
Now there appears no pretence of suspicion, that the paper was not correctly copied, and the record honestly made out. Had the deposition been lost by the party out of his own custody, it might have been a different question. Here the paper has been taken from him, and placed in the office by authority of a rule of court. As to the supposed insufficiency of Donnell’s testimony, it might not have been practicable for him to swear more particularly to any copy made out by him during his clerkship. He supposes that he copied correctly. No honest man can say more after he has forgotten both the copy and the original. It never was required of a clerk in a public office to preserve for years a remembrance of the papers which he has been employed in transcribing. But he could not swear whether it was an original paper he copied from, or a copy only. That, I think, ought to weigh nothing. When he had forgotten, or nearly so, the very fact of transcribing, it is of very little moment that he cannot remember what paper he transcribed from; whether from original or a copy. Clearly the paper must have been considered at the time as an original. It must have been copied as an original, and certified as an original; for, if not. an original, it was no part of the record, nor fairly annexed to the record. Besides, what had a copy to do in the office? We can. easily see why the original was there, because, unless filed by the first count, it could not be read in evidence. I do not rest *233 my opinion on the oath of Donnell Had there been nothing but the seal of office and the hand of the prothonotary, the copy would, in my opinion, be legal evidence under the circumstances of this case; -the witness being dead, and the loss otherwise irreparable. The court therefore ought, I think, fo. have admitted the evidence, subject only to such exceptions as would have been applied to the original. • '
Nor am I convinced of the correctness of that part of the charge to the jury which respects the statute of limitations. I agree with the counsel of the defendants in error, that we ought to consider words used by the judge, not as laying down a general system, but as only applicable to the matter trying, and to the particular facts in evidence: and that it is not our business' to be searching for little slips made in the hurry of a jury trial, in order to reverse a judgment. Yet it strikes me that any misconstruction of the most important, perhaps, of all the statutes of'the commonwealth, that of limitations of suits for land, a misconstruction which, if it once gets footing, may be productive of much uncertainty, must not be permitted to have the sanction of this court. On this act of assembly, the counsel of the plaintiffs below required of the court to charge the jury in point of law, that the putting of a tenant on the land (by Haines,) is not evidence of ouster, unless the jury should believe that he, Haines, thereby intended'to oust Lodge, and his heirs. The court in their charge to the jt3i*y, answered this matter unqualifiedly in the affirmative. By this the counsel for the plaintiffs in error say, that the jury were misdirected, and taught to be lieve that as to the lapse of time, whether longer or shorter, it was quite immaterial; that to the jury, ten, twenty, thirty, or forty years, was the same thing; that the time fixed by the act of assembly was not the rule, but the jury could absolve themselves from the obligations of the law by the easiest process in the world, by the conjecture of an intent, that is, by intendment now of the intent of a man forty odd years of age, without the least regard to evidence or probability as to matter of fact. For I understand it to be a point conceded, that if there had been any proof in the cause, either direct or presumptive, tending to show that Haines entered for the benefit of the Lodge family, and' not for himself, the direction of the court would have been correct, resting upon* confined to, and leaving the jury to judge of the facts.
The evidence given in the cause being all sent up with the writ of error, it appears that Reuben Haines, in 1782, by writing signed by him, acknowledged the sale of the land in question by him to Jonathan Lodge,, describing the land accurately, and confessing the receipt of the purchase money. This paper was alleged by the defendants below to be a forgery; yet, whether genuine or not, was a mere question of fact; and the jury by their verdict for the plaintiffs below, confirmed by the judgment of the court, have settled the fact of this written transfer, and it is now, *234 upon this hearing, incontrovertible'. The residue of the facts in the case do not appear to have been much contested, nor to have been very doubtful as far as regards any point now in discussion, A few of them must be taken into view, in order to understand the point in question. That Jonathan Lodge died in 1783, about ten years before which time he had purchased the land of Haines by parol contract upon credit, there was abundant evidence on both sides; and that not long afterwards, his widow, with her children, the plaintiffs below, left the land, and removed about two miles from it into the town of Northumberland. What was the age of Jonathan Lodge’s youngest child at the time of his father’s death is not fixed precisely; some of the witnesses say three, some four, and some five' years. The difference is immaterial. Not long after the removal of Mrs. Lodge with her children from the land, Haines took actual possession by a tenant; and the proof appears to be that from the time of taking possession, Haines and his devisees, by a succession of tenants, kept actual possession undisturbed by any suit or claim, as far as appears from this record, until the year 1814, when his ejectment was brought. If then the youngest child of Jonathan Lodge came of age in the year 1800, allowing him ten years more according to the provisions of tne act of limitations, he should have brought his suit in or before the year 1810; so that he was four years too late, unless something could be made out from th„e facts in evidence to warrant an exception from the positive words of the law. The rest of the plaintiffs below, in proportion as they were elder, were still further out of time in their spit. Now, on this whole matter, I take the rule of law to be that a trust ia never to be presumed, but always to depend upon some evidence. It may bé worth while to state that I am not disposed by any means to concede the point, that if Haines did, as contended for in the argument, actually enter upon the land as trustee, that his devisees would not be protected by the statute. But I am not going to make that matter any part of the case in my consideration of it, because, taking the case as it appears by the record, there is not, to my apprehension, any evidence, nor the slightest presumption, that Haines took possession of the land as trustee for the family of Lodge. There was no relationship between them. There was no reason for his interfering, as trustee, that I can discover. It was not a sort of property which required to be specially guarded from injury in the absence of the owners. Throughout the evidence there appears not the least semblance of proof of declaration by Haines, that he took possession or held possession for the sake of Lodge or his family, but the direct reverse. In his conduct, in his words, there appears not any the least recognition, nor the remotest allusion to the interest of Lodge’s heirs in this land, Besides, .he could not have entered for the purpose of securing or coercing the payment of the purchase money, or of the balance of the purchase money, for. the plainest possible reason: he *235 bad already received the full purchase money, as appears by the writing of the 7th of December, 1782. That paper called a receipt, and which we must suppose to be authentic, on this question, appears to be in substance a conveyance. It describes the land and the boundaries, specifies the consideration and the payment of it Wanting a seal it is not technically a deed. But a seal is not believed to be essential to the transfer of lands. Writing and signature only are requisite by the act of-assembly. To be sure the word “ heirs” is left out; but that, I apprehend, makes no difference. No doubt a fee simple was intended, and I should say a fee simple passed. Indeed on this very paper of transfer this suit has been brought by the heirs of Jonathan Lodge, and no objection to their recovery has been attempted, because of the want of words of inheritance. Therefore, there appears no Contingent interest which Haines could possibly have of his own to protect, and no conceivable inducement to enter on the land in character of trustee. It was no part of the bargain that he was to keep possession even before a cent of the purchase money was paid; far less is it to be implied, that he was to have possession after the whole of the money had been paid. He had nothing to receive, and nothing to do except to sign a deed, if ever Lodge or his heirs should think fit to call upon him for the purpose..
Now, it does appear to me, taking the facts from this record, and, supposing that all the evidence given in the cause is-here contained, and viewing all the circumstances of that entry by Haines, and the subsequent possession of himself, and his devisees, that if all these matters do not, by law, amount to a disseisin, and to an 'actual ouster, but only to what is called a trust, a mere trust, unprotected by any length of possession, or, by the act of limitations, then there can, pefhaps, be no circumstances under which that statute can, with certainty, be said to protect any possession.
We may presume, from this record, that, relative to the act of limitations, the same principles of law were contended for, by the counsel of the plaintiffs below, which, they rely upon here, particularly, that the legal possession of land is to be considered in him who has the right. Add to this, the usual supposition of hardship, in taking away the fair property of a man, and giving it to another, by virtue of length of time, and an act of assembly; and the jury, from this direction of the court, on the point of law proposed, may have thought themselves bound by the act of limitations, or not bound by it, just according to their opinions of the merits of the case; and that they were at liberty to create and imagine an intent for Haines, which he, Haines, never dreamt of. They might, indeed, be almost induced to consider it their duty to do so. For why should not the jury, in this creation of their own, imagine every thing to have been fair and nonest, and presume for conscience and justice, rather than for knavery and oppression; and that Reuben Haines took possession of the land, not intending to deprive *236 the owners of their property by the act of limitations, but to hold it faithfully in trust. Thus, in condemning the title of the intruder, the jury would, in every case, support his character for honesty. If it shall be asked, what harm can come of all this? I answer, it is contrary to the words and spirit of the law. It tends to litigation and uncertainty. It goes near to evade, or rather to overrule, the statute of limitations; a statute, which, whether hard or not, must not, while it remains unrepealed, be suffered to be dispensed with by the court, or by the jury. It ought to be remembered, that in every case, without exception, where that statute is brought into effective operation, it is brought to support a title otherwise apparently bad, against a title otherwise apparently good. The hardships of the law are evident, while its most usual effect in protecting titles, originally good and valid, but the evidences of which have perished by accident and length of time, is almost entirely unseen. Jurors, therefore, will not, I apprehend, be likely to enforce the act of limitations, unless they consider themselves bound by the plain words of it. So that, what in other cases might pass as a trifling inaccuracy in a charge to a jury, cannot be overlooked, when uttered with reference to this important statute.
In every case of exception from the general words of the act of limitations, the exception must, in my opinion, be made out by proof. It is never to be presumed. If a man takes possession of the land of infant children, proof that ho was a guardian of the children, will usually form a case of exception from the words of the law, and make him a trustee. So one tenantin common, or coparcener, taking possession, will be deemed to hold for his partners as well as himself. So a tenant, holding under a lease, or by permission, will not be protected against his landlord by any limitation. So a purchaser taking possession, under contract to pay the purchase money, and not paying it, will not be aided by length of time. But, in all these cases, and in every similar case, I take it, the fact of being father, guardian, partner, tenant, or purchaser, must be made to appear by evidence, or, there must be proof of acknowledgment, or declaration whereon to found the trust; otherwise, the only presumption which can exist, will be the common presumption of law, that, whatever a man does, or acquires, he does, or acquires for himself, and not for others.
As to the presumption of law, relied upon by the counsel for the defendants in error, that the possession is in him who has the right, most evidently the cases cited on that point seem wholly inapplicable here. Clearly they apply to questions of undefined boundaries, or of interfering boundaries, and to no other case.
On all the other points of the case, I concur with the Chief Justice.
Duncan, J., and Huston, J., having been of counsel in the cause, took no part.
Judgment reversed, and a venire faeias de novo awarded*