HUGH SWEENEY and ESTHER ANN his wife, JOSEPH PHILLIS, MARGARET PHILLIS, and THOMAS PHILLIS by his next friend HUGH SWEENEY, Plaintiffs in error, and Plaintiffs below, *v.* JOSEPH SHEFFIELD, NORMAN SUTLIFF, ELEAZAR CROSBY, JAMES CURTIS, AMANDA KEMP, and NEAL RICKENSON, Defendants in error, and Defendants below.

1. It is the duty of one who obtains a vacating warrant under § 9, act of 3d April, 1792, "for the sale of the vacant lands within this Commonwealth," of those who claim the benefit of the warrant, to enter upon the land and reside thereon before the warrant will give title.
2. A vacating warrant cannot issue when the land is occupied adversely to the person obtaining the warrant.
3. A vacating warrant, issued for a seated tract of land, is void.

ERROR to the Common Pleas of Warren county.

This was an action of ejectment brought against the defendants, to recover possession of four hundred and seven acres of land in Columbus township, Warren county.   The titles on which the plaintiffs and defendants respectively relied, are set forth in the opinion of this court.

*Brown* and *Pearson*, for plaintiff in error.

When a warrant holder neglects to make the settlement required by law, the same is forfeited, and the state may take advantage of the forfeiture at any time.   If vacating warrants cannot be issued "to other actual settlers for said land," (§ 9, act of 1792,) the act of 1792, after 1794, would be a dead letter ; and the warrant holder would be exempt from the necessity of making a settlement, as by § 2, act of 22d April, 1794, no warrant could issue, except in favour of one " claiming the land by virtue of some settlement or improvement being made thereon;" and by § 1, act of 22d September, 1794, " no application shall be received at the land office for any lands within this Commonwealth, except for such on which a settlement has been, or hereafter shall be made, &c., and a person, &c. residing thereon."   After these acts, an application for a vacating warrant was required to set forth a set-

tlement by the applicant, or those from whom he claimed.    The acts of 3d April, 1804, of 20th March, 1811, of 14th March, 1814, all manifest the intention of the legislature not to dispense with the terms of settlement.

A vacating warrant is, by § 9, act of 1792, placed on the same footing with any other warrant.    On default of original warrantee it may issue to an actual settler, or one desirous of settling, and may again be vacated for the default of them.    By § 3 of this act a warrant may issue in favour of one who has settled or desires to settle. In this case, if the settler had entered adversely to the warrant holder, after his default, and then perfected his settlement before applying for vacating warrant, it was unnecessary to settle under that warrant; his settlement would attach to the warrant under the 3d section, and the vacating warrant would confirm his original entry.    1 Serg. & Rawle, 74.

The legislature did not require one to make a settlement under a warrant, when the same had been perfected before it issued.

As against the original warrantee, a settler without a vacating warrant is a trespasser; but as soon as he obtains his vacating warrant, his trespass is cured by the grant of the forfeited title.    In all the cases reported, there either was no vacating warrant, or it issued after suit brought.

The act of 20th March, 1811, does not affect this case.    The act of 3d April, 1833, is the first which dispensed with the necessity of a settlement of these lands; and down to that time they were open to entry by actual settlers, provided such entry was followed by a vacating warrant to confirm it before suit brought.    Phillis's settlement having been perfected by five years' residence and the necessary improvement, and transferred to Irvin, rendered a settlement by the latter under his vacating warrant unnecessary.

*Huidekoper*, with whom was *Galbreath*, for defendants in error.

The first error which has been noticed by the plaintiffs' counsel in argument, is that part of the charge of the court below which refers to the settlement made by Miller, in 1802, on the tract of land in controversy, warranted in the name of Kirk Betz.

It is to the affirmative answer given to this point by the court below, (viz., that Miller's settlement would be presumed to be under the warrantee and inure for his benefit,) that the plaintiffs now except.

After the lapse of nearly half a century, positive evidence in a case of this kind could hardly be expected; a reasonable presumption is all that should be required.    The true rule is laid down by his honour

Judge Kennedy, in Nieman *v.* Ward, 1 Watts & Serg. 79, where, in speaking of surveys, he says, after so many years have run round, (in that case sixty-four,) circumstantial evidence tending to show probability is sufficient. The warrantee was not required by the act of 1792 to make the settlement in person ; he might procure another to do it for him.

As to the effect of Miller's settlement on the title of the warrantee, it can make no manner of difference in which of the two capacities he (Miller) entered. If it was under the warrantee, of course the settlement would be for the benefit of the latter. And if, on the contrary, he entered, as he appears to have done, without a vacating warrant, and had intended to claim adversely to the warrant ; then, according to the decision in the case of Jones *v.* Anderson, 4 Yeates, 574, and a long train of similar cases, ending with Irvine *v.* Barnes, in 5 Watts, 497, he would be a mere trespasser, and as a tort feasor could derive no advantage from his own wrong; but his settlement, if complete, would inure for the benefit of the warrantee. This is clearly decided in the case of Ross *v.* Barker, 5 Watts, 391.

With regard to the general errors assigned, we think that the great questions which spring out of this cause are governed, not as the plaintiffs' counsel contend, by the act of 1792, but by the acts supplemental to that act, which have since been passed by the legislature. On the 20th March, 1811, (see Stroud's Purdon's Dig., 6th ed. p. 680,) an act was passed for the express purpose of settling the disputes which agitated the public mind in relation to these warrants. It is there enacted, in the first section, that in all cases prior to that act, wherever the warrantee had made an agreement with a settler, previous to such settler going on to the land to settle it, and the settler had performed the duty, although after the time given for so doing by the act of 1792, the state would cease to have any claim, and would confirm the title. The act of the 19th March, 1816, (Stroud's Purdon of 1841, p. 687,) reviving the act of the 20th March, 1811, above referred to, not only validates the title in all cases where the settlement has been made prior to its passage, but also declares, that all contracts that *shall be made* by the warrantee within two years from the 1st of April then next ensuing, with a settler for the purpose of making a settlement agreeably to the prior act, should be valid.

The act of 1816 we think clearly, and beyond controversy, extends the time of the warrant holder for the making of his settlement until April 1st, 1818. In 1817, James Phillis, under whom the plaintiffs claim, entered upon this tract as a settler without a vacating warrant: and by so doing, we say that he brings himself within the principle of

the cases of Jones *v*. Anderson, 4 Yeates, 574; Ross *v*. Barker, 5 Watts, 391, and Campbell *v*. Galbreath, 5 Watts, 431, 432.

. The cases I have referred to fully establish this principle, that the entry of Phillis adversely on the land, *within the time given by law* to the warrantee for the making of his settlement, is itself a prevention and a legal excuse to the warrantee for not making the same; nor can Phillis, or his representatives, allege or avail themselves of the non-fulfilment of the condition of settlement by the original warrantee, when Phillis himself was the occasion of it. If he remained there and completed the settlement, it would inure for the benefit of the warrantee, whose title would thereby become perfect and complete. This is clearly decided in the cases of Ross *v*. Barker and Campbell *v*. Galbreath, before referred to; part of this latter case, it is true, has since been overruled, but not the principle in question, which is strictly in unison and harmony with the whole current of decisions on the subject.

On the 27th March, 1824, (Stroud's Purdon, 6th ed. p. 694,) the legislature again revived the act of the 20th March, 1811, and prospectively continued its provisions until the 1st of April, 1826. The vacating warrant in the name of Thomas Irvine was taken out on the 14th June, 1825, and the survey made in the following month; with regard to these, we say that they were utterly and entirely void. The Commonwealth had extended the time to the warrantee to make his settlement until the 1st April, 1826, and therefore she could not enter for the breach of a condition which she had herself excused, nor could she confer that right on another. A vacating warrant does not per se invalidate the original one; the former is issued for any one who will procure the necessary affidavits for the land office; it is an ex parte proceeding altogether, in which the original warrantee is not heard, but it remains for subsequent decision by the courts, to judge of their respective validity.

There is nothing in the first error assigned by the plaintiffs. The charge of the court below was in perfect accordance with the evidence.

In reply to the concluding part of the fourth error assigned by plaintiff, I would say, that all the evidence on the trial of this cause went to show, that the vacating warrant was taken out, not by Thomas Irvine, but by his uncle, Guy C. Irvine, and one Peter Jenkins. G. C. Irvine took the warrant out of the land office, he paying half the money and Jenkins the other half. G. C. Irvine and Jenkins also paid the surveyor, and had the survey made; they therefore by every rule of law were the owners of the warrant; no transfer was shown from them to Thomas Irvine, under whom plaintiffs claim. The words " other actual settlers," in the act of 1792, have been held in the case of

Skeen v. Pearce, 7 Serg. & Rawle, 303, and in several other cases, to mean persons *desirous to settle,* not persons in actual possession. All the cases coincide in this, that if a man goes on a warranted tract adversely, without a vacating warrant, he is a trespasser.

Authorities cited by defendant's counsel were, Jones v. Anderson, 4 Yeates, 574 ; Buchanan v. Myer, 3 Yeates, 536 ; Patterson v. Cochran, 1 Bin. 233 ; Skeen v. Pearce, 7 Serg. & Rawle, 303 ; Irvine v. Barnes, 5 Watts, 497 ; Smith v. Collins, Id. 505 ; Ross v. Barker, Id. 391 ; Campbell v. Galbreath, Id. 431, 432. Acts of Assembly, (head of " land office,") March 20th, 1811, sect. 1 ; March 19, 1816, sect. 1 ; March 24, 1818, sect. 1 ; March 27, 1824, sect. 1 ; April 1, 1826, sect. 1 ; March 31, 1831, sect. 1.

The opinion of the court was delivered by Justice BURNSIDE.

This was an ejectment for lands on the west side of the Alleghany river, in the county of Warren.

The evidence not being returned with the record, I have endeavoured to obtain the material facts from the charge of the court, and the arguments which the learned counsel were pleased to furnish. The title of the plaintiffs commenced with an improvement and settlement by James Phillis, in 1817, and continued until 1824 or 1825.

6th June, 1825, application of Thomas Irvine for a vacating warrant. 14th June, 1825, vacating warrant issued to Thomas Irvine. 22d July, 1825, survey. 11th November, 1825, Thomas Irvine died, and the plaintiffs were his heirs or representatives.

Defendants' title.—10th April, 1793, warrant to Kirk Betz, survey duly returned thereon. John Miller settled on the land with his family in 1802, cleared about eight acres, and was proved to have continued, and was living there in 1805. After that period it was not known where he resided, but it was in evidence he was not living on the land in 1809. When he left it did not appear. Wilhelm Willinke and others were the owners of Kirk Betz, and they conveyed by deed to Peck and Shattuck, who brought an ejectment against James Phillis for the Betz tract, and part of an adjoining tract, No. 22. 4th June, 1825, tried, and verdict and judgment for the plaintiff. 6th June, 1825, hab. facias possessionem issued, which was returned by the sheriff, executed by putting the plaintiff in possession of No. 22, defendants having abandoned No. 11, warranted in the name of Betz. Alias hab. facias issued on the 6th May, 1828, returned executed, Joseph Sheffield, one of the defendants in the present writ, receiving possession under the plaintiff from the sheriff. In 1828, Shattuck and Peck reconveyed the land back to Wilhelm Willinke and others. The

defendants in this ejectment claimed under Willinke and others by deeds of conveyance subsequent to that time.

There was no evidence that the persons removed by the sheriff in 1828 had any connection with the plaintiff. It further appeared, that Joseph Sheffield had cleared more than eight acres during the first five years of his residence on the land, and had continued to reside on the tract ever since, extending his clearing and making valuable improvements. Immediately after Shattuck and Peck recovered in the ejectment, James Phillis removed from the land, and by parol gave his claim to Thomas Irvine. No consideration appears, nor was a deed made until a few days before the trial of this ejectment. Neither Irvine, or any person for him, or claiming under his warrant, ever entered or obtained possession of the premises.

Vacating warrants were authorized in certain cases, and issued in pursuance of the 9th section of the unfortunate act of the 3d of April, 1792. That section provides that " no warrant or survey to be issued or made in pursuance of this act for lands lying north and west of the rivers Ohio and Alleghany, and Connewango creek, shall vest any title in or to the lands therein mentioned, unless the grantee has, prior to the date of such warrant made, or claimed to be made, or shall within the space of two years next, after the date of the same, make or *cause to be made* an actual settlement thereon, by clearing, fencing, and cultivating at least two acres for every hundred acres contained in one survey, erect thereon a messuage for the habitation of man, and residing thereon for the space of five years next following his first settling of the same, if he or she shall so long live ; *and in default of such actual settlement and residence, it* shall and may *be lawful to and for this Commonwealth to issue new warrants to other actual settlers for the said lands, or any part thereof, reciting the original warrant, and that actual settlement and residence have not been made in pursuance thereof, and so often as default shall be made,* for the time and in the manner aforesaid ; *which new grants shall be made, and subject to all and every* the regulations contained in this act ; provided always, that *if* any such actual settler, or any grantee in any such original or succeeding warrant, shall, by force of arms of the enemies of the United States, be prevented from making such actual settlement, or be driven therefrom, and shall persist in his endeavour to make such actual settlement as aforesaid, then, and in such case, he and his heirs shall be entitled to have and to hold the said lands in the same manner as if the actual settlement had been made and continued."

The object of the legislature was to settle the country, and to form a barrier against the Indians. Was Irvine, who obtained the vacating

warrant for a settled and improved tract of land, an actual settler? Or did Irvine, or any person claiming under him, ever enter on the land in question? Under this much contested ninth section, I hold it to be the duty of the person who obtains a vacating warrant, or those claiming the benefit of the warrant, to enter upon the land and reside thereon, before the warrant would give him title. To enable the owner to do so, the law contemplated that the vacating warrant should issue for vacant and unoccupied land, unless when a settler was in actual possession; and then he was bound to continue the possession, to give efficacy and effect to the warrant. It could not issue, when the land was occupied adversely to the person obtaining the vacating warrant. The object of the vacating warrant was to place a settler on the land. Its views were prospective as to settlement. If it was not so, a false construction would be given to the act of the legislature, and a door opened to injustice, perjury, and fraud. When an ejectment was brought by a person owning the original warrant and survey, against an improver, it would be the interest of the improver to loose the land, turn out, give his improvement to a relative, or his lawyer; who then obtains a vacating warrant, and lies by short of the period of twenty-one years, then brings an ejectment, and attaches the warrant to the trespass and settlement, and recovers the land with all its improvements. This vacating warrant, according to the argument, is to heal all trespasses; a perfect panacea not contemplated by the act of 1792. That act allows the vacating warrant only, when the land was not improved. Possession must be continued, and taken in pursuance of a vacating warrant, to enable the owner to hold the tract. The plaintiffs further complain, that the Common Pleas instructed the jury, that Miller's settlement on the land was presumed to be made under the warrant, until the contrary was shown. So has the law ever been held. The benign principle of justice is, that the possession is presumed to be in accordance with the title, and not in hostility to it. Pope *v.* Lodge, 16 Serg. & Rawle, 229; Johns. Rep. 216.

The entry is authorized for a condition broken. That condition is settlement, and the condition is never broken if the tract is seated. The vacating warrant is substituted for the entry of the Commonwealth. This tract was seated, the state had no right to enter. She had granted the lands. Her conditions were complied with, and the vacating warrant was utterly void. I deem it unnecessary to review the different acts of Assembly, passed for the settlement of the unfortunate litigation arising under the act of 1792. The tract was seated, and the great object of the law was accomplished.

The judgment is affirmed.