**1814.**

Sunbury,
Saturday,
June 18.

Lessee of SWEITZER *against* MEESE and others.

IN ERROR.

*Notice to take depositions at the house of —— Spangler, innkeeper in York, on the 27th of the present month of December, between the hours of ten A. M. and seven P. M., though the notice has no date, does not contain Spangler's first name, and was served only on one of three defendants in ejectment, is good so as to authorize reading a deposition taken at five P. M. on the 27th at the house of Samuel Spangler; the notice having been served on the 2d of December, and there being no proof that either of the defendants attended at the house of any Spangler in York, on any hour of that day.*

*A grantor with special warranty, is a good witness to support the title against any one not claiming under him or his heirs. Qu. Whether a feme covert is a good witness to support the title of a grantee from her husband, when her right of dower has not been released.*

THIS was a writ of error to the Common Pleas of Centre county, to remove the record and proceedings in an action of ejectment. With the record came up two bills of exceptions by which it appeared as follows:

Upon the trial of the cause, the plaintiff offered to read the depositions of *Rudolph Spangler* and *Margaret Dowdle*, taken at the house of *Samuel Spangler* in *York* at five P. M. on the 27th of *December* 1809, in pursuance of a notice, entitled in the cause, and directed to *George Meese* one of the defendants, calling upon him to take notice that the depositions would be taken " at the house of —— *Spangler*, inn-" keeper in *Yorktown, Pennsylvania,* on the 27th day of " *December*, the *present* month, between the hours of ten " o'clock in the morning, and seven in the evening of that " same day." The notice had no date, but was served on *Meese* upon the land, on the 2d of *December* 1809.

*Spangler* the witness, and his wife, had conveyed the premises to the lessor of the plaintiff on the 25th of *March* 1797, with covenant of warranty against himself and his heirs and also against the heirs of *Michael Hahn*, whose administrators had conveyed to *Spangler*, in pursuance of a contract by *Hahn.*

*Margaret Dowdle* was the wife of *Michael Dowdle*, who had been equally interested with *Hahn* in the premises, and had conveyed his interest therein to the lessor of the plaintiff by deed dated the 14th of *March* 1792, the witness not joining in the conveyance.

The defendants objected to both depositions, as well on the ground of defects in the notice, as of interest in the witnesses, and the Court sustained the objections.

*Watts* for the plaintiff in error.

The objections to the depositions and witnesses had no foundation. It was said the notice has no date; but it was served on the 2d of *December*, and referred to the 27th of the *present* month; of course the delivery fixed the date. Another objection was, that the notice was given only to

one defendant; but it was given to him upon the land, and notice to one is notice to all in a joint trespass. At all events it authorized the reading of the deposition against him. A third, that the name of *Spangler* was not mentioned; but there was no other *Spangler* an inn-keeper in *York* but *Samuel*, and the defendants did not attend at any *Spangler's*. If they had, the objection would have had colour. The last objection to the notice, was the length of time it allowed. This was in the defendants' favour; and whether or not, they cannot set it up as a defect, when they did not attend at any hour.

*Spangler* was a perfectly good witness. Having warranted only against himself, his heirs, and the heirs of *Hahn*, he had no interest either in this suit or question. The vendor of lands is a good witness to shew title, except where his warranty interferes. *Twambly* v. *Henly* (a).

*Margaret Dowdle* was also a good witness to establish the title, because although she might have had a contingent interest in the question, she could not have given the verdict in evidence in a suit for her dower. *Jackson* v. *Bard* (b), and *Jackson* v. *Van.Dusen* (c), are conclusive. The latter is in point, *Peake's Ev.* 151.

*Burnside* and *Duncan* contra.

The notice did not contain sufficient certainty. Though the same may not be requisite, as in a notice to execute a writ of inquiry, it should have at least certainty to a common intent, in like manner as notice of a bill to perpetuate testimony, or of the appointment of arbitrators. Here there was no distinctness either of person or place. In point of time too, the notice took too great a range. Can it be required of a party, that he shall wait nine hours upon his opponent? It at most should have allowed but *two* hours, *Crompt.* 285, and should have been served upon all the defendants. *Crompt.* 286. The defendants may defend separately, under distinct titles. The joint trespass in the ejectment is a fiction. The Court cannot know how they claim, until they open their titles.

*Spangler's* deed contained a warranty against *Hahn's* heirs, and it did not appear, but that some one of the defendants claimed under *Hahn*.

(a) 4 *Mass.* 441.     (b) 4 *Johns.* 130.     (c) 5 *Johns.* 144.

*Margaret Dowdle* was interested in the event, because if *Sweitzer* recovered under her husband, she might give the verdict in evidence against *Sweitzer*, to shew he made title, and got possession under her husband. In case of *Sweitzer's* failure, she could not recover against a stranger, without proving her husband's title and seizin. She stood as a remainder man, who cannot be a witness, though the heir may. Her right, though inchoate, commenced on the marriage. 2 *Bl. Com.* 131., 2 *Bac.* 387, *Dower* G. *Jackson* v. *Van Dusen*, is supported by no other case. It appears to have been ruled by *Jackson* v. *Bard*, which is totally different from it.

TILGHMAN C. J. gave no opinion, having been sick during the argument.

YEATES J. Two bills of exceptions have been sealed by the Court, upon their overruling the depositions of *Rudolph Spangler*, and *Margaret Dowdle*, which were offered in evidence on the part of the plaintiff.

The objections taken to them, are grounded on the want of proper notice being given under the rule of court to the adverse parties, previously to the witnesses being examined, as well as a supposed interest in the witnesses themselves.

It has been contended, 1. That the notice to take the depositions at the house of —— *Spangler* inn-keeper in *Yorktown* was uncertain; because there might be twenty persons of that name keeping inns in *York*. 2. The notice bears no date on the face of it. 3. The time of taking the depositions was stretched to an unreasonable extent; but at all events they were taken too early. 4. The notice was served on *George Meese* one of the defendants only, and ought to have been served on all of them.

As to the first objection, I answer that it does not appear there were more persons than one of the name of *Spangler* inn-keeper in *York*. If the defendants had attended on the day appointed at the inn of any *Spangler* in *York*, and been led by the form of the notice into a mistake, the exception would have prevailed. But it is admitted that neither of the defendants nor any one in their behalf, did take any step in consequence of the notice.

The notice given, was "to take depositions at *York* on "the 27th day of the *present month* of *December*, between "ten o'clock in the morning and seven o'clock in the even- "ing of the same day," and was proved by *Isaac Weideman* to have been served on *George Meese* one of the defendants, on the lands in question, on the 2d of *December* 1809. It appears by the depositions, that they were taken at the house of *Samuel Spangler* inn-keeper in *York*, upon the 27th of *December* 1809, at five o'clock in the afternoon. These facts obviate any seeming difficulties on the second exception. The service of notice on the 2d of *December* 1809, supplies the defect of date; for on the 27th of that month the depositions were to be taken. Allowing the defendants an interval of nine hours on a particular day, at an inclement season of the year, when unforeseen difficulties might obstruct their journey, was a real benefit to them; and if they or any one in their behalf had attended at any time before seven o'clock, and were prevented from having the witnesses cross examined, the objection would have held good. I explicitly assert, that I would hold any notice bad, which would probably deprive the adversary of his undoubted right to put his own questions to the witness. On this subject I have heretofore expressed my sentiments in *Sheeler* v. *Spear*, 3 *Binney* 134, which I still retain. The form of notice to take depositions has no general rule but one, that it should contain convenient certainty as to the time and place of taking them. We should avoid a laxity which may tend to defeat the benefit of a cross examination by the adverse party. The notice should be sufficiently correct to inform him when and where he should attend. It is obvious that a notice to take depositions in a populous city, should be more special, as to the designation of place, than when intended to be taken in a town of inconsiderable extent.

If *George Meese* had been the landlord, a notice served on him would be sufficient to entitle the plaintiff to read the depositions, as to all the defendants. This does not appear, and I agree we are not at liberty to travel out of the record. The titles of the defendants were not disclosed when the evidence was offered. Take then the strongest case that can be supposed for them, in support of the fourth objection, that they held under distinct rights. In such instance, each

defendant might defend his separate possession according to its relative merits. In this state of things the deposition would be good evidence as to *George Meese*, but not as to *Jacob Meese* or *Adam Cross* the other defendants, and the jury should have been instructed accordingly, when this ground of exception was urged to the deposition.

I do not adopt the principle urged by one of the plaintiff's counsel, that service of the notice upon one of the defendants, on the lands in controversy, renders the service good as to all; because different defendants may have different grounds of defence. I take the general practice to be, to give notice to the *active* plaintiff or defendant, who conducts the suit, but to avoid all misconceptions in such cases, it is most prudent to provide for them by the terms of the rule. In many instances it would be impracticable to give notice to all the parties in the suit, whether plaintiffs or defendants.

It has been further insisted, that *Rudolph Spangler* was disqualified from giving evidence on the ground of interest. It is stated that on the 25th of *March* 1797, *Rudolph Spangler* and wife conveyed to the lessor of the plaintiff one moiety of the lands in controversy, with covenant of special warranty against himself and his heirs, and against the heirs of *Michael Hahn*, who in his life time articled to convey to *Spangler*. The defendants' counsel say, it does not appear but that they might have claimed under *Michael Hahn* or his heirs, in which case *Spangler* could not be received as a witness. What is this, but in effect asserting that *Spangler* was interested, because *by possibility* he might be interested? The general rule of law is agreed to be that a vendor of lands is a good witness to shew title, when there is no covenant of warranty. If the defendants meant to rely on an exception to that rule, it was incumbent upon them to establish the facts upon which this exception was founded, that in truth they held possession under the heirs of *Michael Hahn*.

As to *Margaret Dowdle*, I consider her a competent witness. If she should hereafter claim dower in the lands in controversy, her right would be the same precisely, whether it was demanded by her writ against the lessor of the plaintiff, or the defendant in this suit. In either instance

it would be incumbent on her to establish her claim by legal proof of the seizin of her husband either actual or legal in these lands, without which she could not recover. She could not claim under the plaintiff, but under her marriage and the supposed seizin of her husband, and whatever might be the result of the present trial, it was *res inter alios acta*, and the verdict could neither be given in evidence for or against her. It is so adjudged in the two cases in *New York*, 4 *Johns.* 233., 5 *Johns.* 158. The utmost extent to which the objection could go, would be restrained to her credit. She might be said to be interested in the question then to be tried, but this according to our uniform decisions does not form an objection to her competence. It is similar to different underwriters on the same policy of insurance being received as witnesses.

I think there was error in overruling the depositions of either of the witnesses, that the judgment below be reversed, and a *venire facias de novo* be awarded.

BRACKENRIDGE J. In an ejectment between two alienees claiming under the same grantor, but claiming subject to the wife's right of dower, which was the *New York* case 4 *Johnson* 230, there can be no doubt but that the wife may be a competent witness; for it can make no difference with her, which of them takes the two thirds, or that interest whatever it may be to which she is not entitled. The *New York* case, 4 *Johns.* 230, was that of a widow totally disinterested as to which of the alienees made out a title by their deeds from the husband. Her claim of dower remained unaffected either as to the right or the *facility* of recovery against either of them in a proceeding for her dower. The case, 5 *Johnson*, is ruled upon the strength of this, and if it is the same or a similar case, that of two persons claiming under the husband of the widow, who is entitled to dower, it could make no difference to her which of them succeeded, and the verdict could not be given in evidence in such case, being *irrevelant* and proving nothing. That is, it could have no bearing on the question as between her and either of these, to shew her right of dower in the estate which both claimed under the same grantor or ancestor in the case.

Lessee of
SWEITZER
*v.*
MEESE
et al.

3 S

But take the case before us and apply principle; for it must be the same case where you apply precedent. Even a case of *cattle running at large,* cannot always be said to be a case *upon all fours,* for it is not in that sense of the word that the maxim is applied *nullum simile est idem,* or *nullum simile quatuor pedibus currit.*

The present case is that of an adverse claim to the title of the husband of the witness. If it succeeds, it must change the possession of the person holding under the husband, or in other words deriving title from him. He sets up a title paramount to the husband and the wife, and he claims above them both. The title set up is adverse to them both, and it is for the whole possession that had been of the husband and wife. Has not the widow an immediate interest in defending herself with the tenant in common, a tenancy in *law,* if not in *fact?* It is true she may recover her dower against the adversary, should he get into possession of the whole, but in that case she must establish not only her marriage &c., but she must go on and prove original title in the husband. This she has no occasion to do against a person claiming under the husband. It will be sufficient to shew the conveyance to him, and that he got into possession by a verdict and judgment. and an *habere facias possessionem* under that judgment, which must conclude him as to the necessity of her proving an *original* title in the husband. The proceedings in this case therefore could be given in evidence, as shutting his mouth to say that she was not entitled to dower in this estate on the ground of not being the husband's. This on a suit between *Sweitzer* and the widow *Dowdle.* This not on the ground of a verdict being given in evidence, being between the same parties, and on the same points, but as proof how and in what manner *Sweitzer* came into possession, and that he derived title from the husband, after shewing which, how could he contest her right of dower? It must facilitate her recovery very greatly to have to do with *Sweitzer* rather than with *Meese* who claims paramount, and will put her to the trouble of proving title in her husband as well as in herself. The first so far as respects *Sweitzer* was already proved by his recovering under it. The last could be more easily made out, *her right to recover dower in what was her husband's.*

How can it be said what weight the widow's testimony had in establishing the *original* title of her husband? It was necessary to the proof, otherwise it would not have been adduced. We are not to suppose that the title could have been established without it; for where an ounce is necessary to make up a pound, there must be that ounce. In a suit for her dower against *Meese*, claiming paramount to her husband, she must prove the seizin or original title of the husband as against him. But she cannot use her own testimony; and therefore she will want this to complete the weight, that outweighed before. As against *Sweitzer* she need not prove original title, and therefore can do without it. She can shew the derivation, and the only question can be, has her right of dower passed by the conveyance from her husband or otherwise been taken away, as by a sale for debts &c. This distinction I threw out in the breaking of the case, but it did not seem to be attended to, if it could be answered; but which I thought nevertheless, was the only thing that was to be considered. The counsel appear to me to have been misled by the *New York* cases, and the *indistinct manner* in which the law is laid down by them. They decide the matter right, at least in the case in 4 *Johnson*, but they do not distinguish in their reasons as I could have wished.

If we analyze the case before us, we must see that the widow must have a direct interest in establishing her husband's title, because it is only on establishing that title that she can have any right.

But it would seem to me that the rejection of *Spangler's* deposition was error, and that he could not be said to be interested in the then ejectment. He had covenanted against the heirs of *Hahn*, but the heirs of *Hahn* were not demandants here, but a claim of title paramount. A warranty may be special, as being against the grantor, or those claiming under him, or against a particular person. It is not any deriving title under the grantor or the particular person warranted against, that here claims.

As to the notice it is informally and unskillfully made out; but I believe it may do. It is directed to all the defendants and served upon one. The defendants had all appeared by the same attorney, and defence was taken for them all.

It is on these two grounds only that I am willing to reverse the judgment.

There was something said about personal estate compensating the widow in lieu of dower, which I could not comprehend, unless by interrupting the counsel and asking questions on the *law* or *fact*, to which they alluded, but which interruption they did not seem to like; so that not understanding it, I am obliged to lay this part of the argument out of my consideration.

Judgment reversed.