# Porter *versus* Wilson and Kelly.

13  641
147  452

13  641
19 SC ¹566

13  641
41SC ³183

Before evidence can be given of the contents of a *lost* paper, it is indispensible to prove, in the first place, the existence and execution of the original instrument; next to give positive proof of its destruction, or of a diligent search where it was most likely to be found, by which its loss has been ascertained; and a search for it made upwards of twelve months before the trial will not be sufficient.

As to the proof of handwriting, a distinction exists between the proof as to *lost* instruments, and of a paper produced and under the inspection of the witness.— With respect to lost instruments, and where the knowledge of the witness has been acquired *since* he saw the paper, the proof of the hand writing as to the execution of which he testifies, must be of the most unequivocal and positive kind. Nothing short of actually seeing the party write, or an acknowledgment, distinctly and clearly made by the party himself, will suffice.

Before a witness is permitted to state his belief of the genuineness of the hand-writing of another, he must state facts and circumstances to show he has knowledge enough to speak of it with reasonable certainty. It must not be guess work or mere probability.

On the trial of a suit against one as a partner, another person who admits his liability as partner, cannot be permitted to testify as to the character of the original articles of partnership said to have existed, but alleged to be lost, he being interested to throw the payment of half of the debts on the defendant.

A letter of one partner admitting the partnership is evidence against himself, but it is not evidence without more, to fix another person with liability as a partner.

Where goods purchased by one as a member of a firm, are knowingly sent to a place beyond that, at which the partnership establishment was located, it is a circumstance from which the jury may infer a fraudulent combination between the vendors and purchaser to charge another as a partner.

ERROR to the Common Pleas of *Dauphin county*.

This was an action of assumpsit brought by Wilson and Kelly *vs.* Holland and Porter, on a promissory note dated 19th May, 1848, signed Holland and Porter, for the payment of $1,479 94 to Wilson and Kelly, at one day after date. The note was signed by Holland with the names of Holland and Porter. The writ was served on Porter and returned *nihil* as to Holland. The note was given for groceries, &c., purchased by Holland from Wilson and Kelly, in Baltimore, in 1847.

The case was tried in March, 1850.

The principal questions in the case were:

Was there a partnership? If there was, for what purpose? and was the note in suit given for a partnership debt?

The defendant, Porter, contended that an arrangement which existed between him and Holland, for mining coal at Nanticoke, in Luzerne county, was not a partnership; that Holland had no authority to purchase goods in the name of the alleged firm, or give any notes of the firm, and that the goods in question, for which the note was given, were not purchased for or used at the mining concern at Nanticoke.

On the trial, the plaintiff proved the furnishing of the groceries

[Porter *v.* Wilson and Kelly.]

&c., by plaintiff's on the order of Holland, to the amount of the note in suit, and of their being sent in a canal boat, directed to H. & P., Wilkesbarre. Also, depositions were read showing in some measure the nature and extent of the operations at Nanticoke, in which Holland and Porter were concerned.

The plaintiffs offered in evidence a letter of Holland addressed to Wilson and Kelly, plaintiffs, agreeing to accept a draft in favor of Wilson and Kelly, to be drawn by them for the amount of the account for groceries, in which he states that " Mr. Porter as well as myself will feel obliged by the offer."

This letter was objected to—was admitted and defendant excepted.

After plaintiffs had closed, evidence was given on the part of defendant.

Plaintiffs afterwards offered in evidence a paper purporting to be a copy of an alleged article of agreement between Holland and Porter, in which paper it was stated that they had agreed to form a partnership for the purpose of working and carrying on a coal mine for a certain period, and of merchandizing and any other business necessarily connected with the carrying on of the said business. The business of said partnership to be carried on in the name of Holland and Porter.

The paper was objected to on the part of defendant on various grounds.

1. That the execution of the alleged paper is not proved by the subscribing witness.

2. There are not such facts proved as will let in the secondary grounds.

3. The proof of knowledge of handwriting of the parties by Sterling is insufficient.

4. The loss of the paper is not proved.

5. No notice has been given to the defendant to produce the paper.

6. That the evidence is not rebutting.

The paper purported that William Stewart was a witness to the execution of the article, and had signed as such.

The offer of the copy of the articles of agreement was preceded or accompanied by several depositions of Sterling, to the same general effect. In one taken in September, 1848, he stated, "I am acquainted with the handwriting of David R. Porter, from notes signed by him, and discounted at the Wyoming Bank, and afterwards paid by him; and from checks passing through said bank signed by him and paid; and the signature to the article purporting to be his, I believe to be his own proper handwriting.", He stated further that he had been employed in the Wyoming Bank as a clerk for nearly four years.

Before the court decided on the offer of the paper, defendant's

[Porter *v.* Wilson and Kelly.]

counsel offered another deposition of Sterling, taken in November 1848, in which he stated, "I do not know that I ever saw David R. Porter write, he never has kept an account at the Wyoming Bank to my knowledge."

To this deposition being received at that time, viz: when plaintiffs were giving their evidence, objection was made by plaintiff's counsel, and the objection was sustained.

The paper purporting to be a copy of the articles of agreement was admitted, and exception taken on part of defendant.

Afterwards, when defendant's counsel were proceeding with their evidence, the deposition of Sterling, last offered and rejected, was offered and admitted.

Stewart, the witness to the alleged articles, in his deposition testified that he went to Luzerne county in March, 1847, to attend to business for Holland and Porter, which business was transacted at Nanticoke, in Luzerne county. The business was mining and transporting coal, and the necessary operations connected therewith; the selling of goods and merchandize, and provisions. The store for selling goods was at Nanticoke. The sign over the door was Holland and Porter. He said, "I know there were writings between Samuel Holland and David R. Porter, but whether they were articles of partnership I cannot say. *I think it probable that I witnessed those writings, but cannot recollect distinctly of signing as a witness.* I think those writings were executed about the first of March, A. D. 1847. I first met David R. Porter in this county, (at Nanticoke,) in the fall of 1847; he was at Nanticoke twice—two successive days—two or three hours each day—he was in the store. I think he did not see the books or any of the papers connected with the store," &c.

The deposition of Samuel Holland was admitted to prove the loss of the paper.

Samuel Holland, of Wilkesbarre borough, in Luzerne county, being produced, sworn and examined, and being of lawful age, deposeth and saith, as follows, viz:

Deponent being sworn, the paper (hereto attached and marked "A") says that he believes it to be a true copy of the original article of agreement between him and David R. Porter, concerning their partnership at Nanticoke, in Hanover township, Luzerne county. The original agreement, which was in my possession some time since, I have lost, or mislaid, so that I cannot find it. I have made diligent search for the paper at several different times, and cannot find it, and further deponent saith not.

SAMUEL HOLLAND.

Sworn and subscribed, October 12, A. D. 1848.

PEARSON, J., charged *inter alia.*

If that article is properly in evidence you can have little doubt

[Porter *v.* Wilson and Kelly.]

of the existence of the partnership, if improperly before you according to the rules we shall lay down, you must disregard it and look to the other evidence of partnership solely. The original article is proved by Samuel Holland to be lost. William S. Sterling testifies that he was a clerk in the Wyoming Bank, and the original article was presented to him to be copied; that he copied it into a book kept by the bank which you will have with you, and whether you will give it any weight or not must depend on your belief of it being copied from the genuine article of David R. Porter. Sterling swears to his belief of it being Porter's writing, but his having the ability to speak on that subject as a witness depends on his previous knowledge of that gentleman's writing. In his deposition he says: "The bank discounted for David R. Porter considerably at various times, I mean David R. Porter's paper, not directly discounted for him, but for others. I saw the most of that paper that was discounted. Those notes were drawn payable at different banks, and we got the money. *I have saw a few of Porter's checks, signed by him, say an half a dozen, may be four or five, at any rate.* Those checks were drawn on other banks and were paid." It is the statement in the detail given, particularly in the latter part of it, which induced the court to admit the copy in evidence. To counteract this, and show that Sterling was not acquainted with Porter's writing, the defendant has read a previous deposition of the same witness, in which he says "he does not know that he ever saw David R. Porter write, he has never kept an account with the Wyoming bank to my knowledge." This second deposition was read by the defendant after the plaintiff had given the copy in evidence, so that the authenticity of the instrument is a question for you. You must be satisfied that Sterling knew Porter's hand writing by having seen him write, by having corresponded with him in a course of business, or seeing his writing admitted by Porter to be genuine or known by the witness to be genuine. If he has not that kind of knowledge the jury can give no weight to his evidence and must discard it, and also the copy sworn to by him.

The defendant has asked us to instruct you, that if the plaintiffs sent the goods to Wilkesbarre, instead of Nanticoke, and knew that Wilkesbarre was beyond the place of shipment to their business house, it is a circcmstance from which you may infer the plaintiffs were privy to the fraud practised by Holland upon Porter.

If the plaintiff knew that Holland was using the name of Porter to buy these goods for his own private use, and not for the firm, the sale would be *mala fide* and Porter would only be responsible so far as he received the goods. But you must be satisfied the goods were bought in bad faith, and not for the use of the firm, and the bare fact of directing them to Wilkesbarre, the place from whence they received the order, would be a very slight circum-

stance, unless it was proved that the plaintiff knew the location of the places, and also where Holland and Porter were doing business, and that the goods were not going to that place.

The whole dispute is one of fact, and is for the jury, subject to the rules we have laid down for your guidance.

To this charge the defendant excepted.

Errors were assigned to the admission of the letter of Holland —to the rejection of the deposition of Sterling, offered on the part of defendant, and it was also assigned for error, that the court erred in their charge to the jury.

The case was argued by *Porter* and *M'Cormick*, with whom was *Boas*, for plaintiff in error.

*Berryhill* and *Kunkle*, for defendants in error.

The opinion of the court was delivered by

ROGERS, J.—This is an action on a promissory note dated the 19th May, 1848, purporting to be drawn by Holland and Porter, in favor of the plaintiff, Wilson and Kelly, for $1,479 94, payable one day after date.   The signature to the note is in the writing of Holland.   The writ was served on David R. Porter, returned *nihil* as to Holland.

The defence was that there was no partnership, that if there was a partnership it was for coaling purposes alone, and that the note was not given for a partnership debt.

The point to which my attention has been particularly called, relates to the first ground of defence.   The others have been settled by the jury and require no remarks from me.

As a most important link in the testimony, the plaintiff offers in evidence the copy of an article of agreement, purporting to be made the sixth day of March, 1847, between Samuel Holland of Wilkesbarre, and David R. Porter, the defendant.   The evidence was objected to, admitted by the court, and exceptions taken. This forms the principal point in the case.

Before evidence can be given of the contents of a written paper, it is indispensible to prove in the first place the existence and execution of the original instrument; next, to give positive proof of its destruction, or of a diligent search by which its loss has been ascertained; 6 *Bin.* 234, Meyer *vs.* Barker; 3 *W. & S.* 291.

The first inquiry naturally in order is, was the first indispensible pre-requisite complied with; was there legal and competent proof of the existence and execution of the alleged original article of copartnership?   The copy offered in evidence purports to be witnessed by William Stewart, who being examined, after stating he was in the employment of Holland and Porter, whose business

[Porter *v.* Wilson and Kelly.]

was mining and transporting coal, and the necessary operations connected therewith, the selling of goods, merchandize and provisions, &c., proceeds to state that he knew there were writings between Samuel Holland and David R. Porter, but whether there were articles of copartnership he cannot say. He thinks it probable he witnessed their writings, but he cannot recollect distinctly of signing them as a witness. He thinks those writings were executed about the 1st March. It must be confessed the testimony of this witness is vague and shadowy as to the existence and execution of this instrument. He neither identifies the paper, nor does he recollect whether he signed it as a witness, nor does he know whether the evidence offered is a copy of the writing that was executed between the parties. That this of itself would not be the proof the law requires is clear. Let us now examine the other evidence on which reliance is had. Walter G. Sterling was examined and deposition taken three times, viz: the 16th September and 2d November, 1848, and the 23d February, 1849. To this testimony I have paid the most particular attention. Sterling took the copy of the article in question some time in the spring of 1847. At that time there is not the slightest reason to believe the witness had either seen David R. Porter write, or that he had ever seen any paper whatever, except the article itself, which purported to be written by him. He knew literally nothing of his hand writing. His impressions, if he had any, must have been derived from the declarations of Holland. There was nothing else from which they could be derived. How deceptious such a course of information must be, will be immediately perceived when we recollect that his belief is based on the declarations of a man, at that time in insolvent circumstances, and who exhibited the article to obtain credit at the bank in which the witness was a clerk. It is all important to observe, that any acquaintance he had with the signature of the defendant was obtained after he returned the articles of copartnership to Holland. It is not necessary to rule that after-acquired knowledge in no case will enable a witness to prove a signature to a *lost* instrument. But this we do say, that evidence in a case of that description must be of the most unequivocal and positive kind. That nothing short of actually seeing the party write, or an acknowledgment distinctly and clearly made by the party himself, will suffice. We wish not to be misunderstood on this point. We take the distinction which is a clear and marked one between the proof of a *lost* instrument, and proof of a paper produced and under the inspection of the witness. It is the first class of cases which calls for the stringent proof alluded to and not the last. Let us now subject the testimony to this test. In the deposition of the 2d November, Sterling says that he does not know that he ever saw David R. Porter write.—This is also plainly inferable from the other depositions. It is

[Porter *v.* Wilson and Kelly.]

clear he never saw a paper, letter, or any instrument of writing whatever actually signed by David R. Porter, or any one which he ever acknowledged to be his. The only knowledge he pretended to have of his hand writing, is derived from notes and checks of his signing, or purporting to be signed by him, which were paid. He did not recollect of any letter of David R. Porter, but he does recollect of a proposition made in writing, purporting to come from him, with regard to taking up or making arrangement of some protested paper by him with the Wyoming Bank. He cannot remember whether his signature was to that proposition.

This is stating his evidence in all its length and breadth, and on this evidence he is permitted to swear to his belief, that the signature to the article he had seen some two years before, when he had no knowledge on which to found a belief, was the proper hand writing of the defendant. Had the original paper been produced, it would not be sufficient, much less when it is the proof of a lost paper. Before a man is permitted to state his belief of the genuineness of the hand writing of another, he must state facts and circumstances to show he has knowledge enough to speak of it with reasonable certainty. It must not be guess work or mere probability. Swearing that the hand writing was that of another is not enough: Slaymaker *vs.* Wilson, 1 *P. R.* 216. There are two modes, as is said in *Best on Presumptive Evidence,* 219, and in *Greenl.* 1 vol. sec. 577, of acquiring knowledge of a party's hand writing sufficient to enable the witness to testify to its genuineness. The first is from having seen him write. The proof in such case may be very slight, and the jury will be permitted to weigh it. The second mode, is from having seen letters or other documents purporting to be the hand writing of the party, and having afterwards *personally communicated* with him respecting them, or acted upon them by written answers producing further correspondence or acquiescence by the party in some matter to which they relate, or by any other mode of communication between the party and the witness, which, in the ordinary course of the transactions of life, evidences a reasonable presumption that the letters or documents were the hand writing of the party; evidence of the identity of the party being added aliunde, if the witness be not personally acquainted with him.

In either mode, as is said by COLERIDGE and PATTERSON, J. in Mudd *vs.* Suckermore, 5 *A.* & *E.* 703, the witness is supposed to have received into his mind an impression not so much of the manner in which the writer has formed the letters in the particular instance, as of the general character of his hand writing, and he is called on to speak as to the writing in question, by a reference to the standard so *formed in his mind.* The witness acquires his knowledge by his own observation, on facts coming under his own eye, and as to which he does not rely on the information of

[Porter *v.* Wilson and Kelly.]

others, and the knowledge is usually and especially in the latter mode acquired incidentally without reference to any particular object, person or document. Here it is not pretended the witness had any personal communication with Mr. Porter, nor had any personal knowledge that the check or draft of which he speaks, had been paid by him, or with his funds. He had no personal knowledge of any act of the plaintiff in error adopting or confirming those transactions. As to these matters it is guess work or mere probability on which he relies. And as to the time when he saw the signature, he had no standard whatever formed in his mind, by which a judgment could be made of the genuineness of the hand writing.

But it is said, Sterling swears positively to the hand writing, and whether true or false, is for the jury. For this position 6 *S.* & *R.* 312, is cited. But these cases bear no resemblance to this: one was a suit on a note, the other on a bond, the authenticity of which were in contest. There the instruments were allowed to be laid before the jury on the acknowledged principle, that where the issue is directly on the authority of an instrument, the court is bound, if there is the smallest evidence of its existence, to permit it to go to the jury, who are the proper judges of the fact.

But this is not so, when the question is as to the admissibility of secondary evidence to supply the place of a lost writing.— There a different rule prevails. In such cases it is a matter of law to be decided by the court, and unless such preliminary proof is given as authorizes its introduction, it is the duty of the court to reject it, and a refusal to do so is error. It is true that a matter which is purely discretionary in the court below is not the subject of a writ of error. But the question of rejecting secondary evidence for want of primary has never been regarded as of that description. This is seen in Leazure *vs.* Hillegas, 7 *S.* & *R.* 323, and Pipher *vs.* Lodge, 16 *S.* & *R.* 214, a cause much contested. The Chief Justice in the latter case says in cases of secondary evidence, the question whether a sufficient introductory ground was laid has always been treated in courts of error as a proper subject of discussion. After referring to the cases of Clark *vs.* Sanderson, 3 *Bin.* 192; Hamilton *vs.* McGuire, 2 *S.* & *R.* 478; Sweitzer *vs.* Meese, 6 *Bin.* 500; Carpenter *vs.* Groff, 5 *S.* & *R.* 162, he proceeds: There is an endless list of other cases where a court of error will inquire into the sufficiency of introductory evidence, as for instance, of the *existence, loss of,* and *search* for deeds, or other writings offered in evidence collaterally. So in Parks *vs.* Dunkle, 3 *W.* & *S.* 293, it was adjudged error in receiving evidence of the contents of a letter without proof of its destruction or loss.

But we think the copy ought to have been excluded, because the loss of the original article of co-partnership was not sufficiently

proved. It may be of the first consequence to the defendant that the original paper be produced. The alteration or insertion of a single word, as for example, the word merchandizing, in the copy, may cost him the earnings of a life time. He has therefore a right, before he is stripped of his estate, to demand strict proof of its loss. We cannot shut our eyes to the fact that the defendant is placed in a peculiar situation of peril, arising from the unjustifiable acts of a man in whom he has unwarily placed confidence. The allegation is he has formed a partnership with a man who has abused the trust reposed in him, saddling the firm with debts which the defaulting partner is either unable or unwilling to pay. It is apparent that it would be exceedingly convenient to throw the debts on another, and by that means relieve himself from one-half at least of the burthen. The defendant is placed between two fires. Under these circumstances it is that the plaintiff, naturally desirous of a solvent debtor, takes the deposition of the defaulting partner, a willing witness, to prove the loss of the original article. The deposition was taken the 12th October, 1848, the cause tried some time in March, 1850, so that upwards of twelve months intervened between the taking of the deposition and the trial. The original agreement, as he says, which was in his possession some time since, he has lost or mislaid, so that he cannot find it. He has made diligent search for the paper at several different times and cannot find it. Had the witness proved the destruction of the paper, although so long before the trial, it would be sufficient. But this is not pretended; it is merely lost or mislaid. The experience of every person must satisfy him how deceptive and unsatisfactory such proof must necessarily be, for we all know that perhaps another search by a willing or anxious person might bring it to light. The rule is that it is not competent to give parol evidence of the contents of a written paper, without first giving positive proof of its destruction, or of a diligent search by which its loss has been ascertained, Parks *vs.* Dunkle, 3 *W. & S.* 291. It must be shown that a *bona fide* and diligent search has been made for it where it is most likely to be found. Can this be said here? Holland's deposition is not sufficient, because he may have since found it. It does not show that it could not be found at the time of trial. Nor does it prove that due and diligent search which the law requires. If a search made twelve months before the trial will suffice, why not twelve years, or any indefinite period of time. There is one remarkable fact attending the deposition of Holland, for it appears that it was not only given in evidence to the jury but it is noticed in the charge. The court says the original article is proved by Samuel Holland to be lost. They also add, if that article is properly in evidence, you, the jury, can have little doubt of the existence of the partnership. Holland also says the paper attached and marked A. he

[Porter *v.* Wilson and Kelly.]

believes to be a true copy of the original article of agreement between him and David R. Porter concerning their partnership at Nanticoke, in Hanover township, in Luzerne county. Thus Holland whose interest it is to throw the payment of one-half of the debts on the defendant, is permitted to testify to the jury as to the original articles of partnership. Of this the defendant has a just right to complain. Indeed if this should be suffered no human being would be safe.

The court was right in admitting the letter of the 30th May, 1849. It is evidence of the declarations of one of the parties of the existence of the alleged partnership as to himself, but it is not evidence without more to fix the defendant. This must depend on his own acts and declarations, Johnston *vs.* Warden, 3 *W.* 101.

We also think that the defendant was entitled to a positive answer to the defendant's request that he should instruct the jury that if the plaintiffs sent the goods to Wilkesbarre instead of Nanticoke, and knew that Wilkesbarre was beyond the place of shipment to their business house, it is a circumstance from which the jury may infer the plaintiffs below were privy to the fraud practised by Holland upon Porter. This however is a point which will no doubt be corrected in another trial.

Judgment reversed, and a *venire de novo* awarded.